### NOEL YOUNG BOND & STOCK COMPANY v. MITCHELL COUNTY.

#### Decided November 4, 1899.

**1. County Bonds—Innocent Purchaser—Notice.**

A purchaser of county bonds must know that the Commissioners Court had authority in law to issue them, and is held to have looked to the order of the court by authority of which they were issued to see that it authorized their issuance for the purpose imported on their face. Following Mitchell County v. Bank, 91 Texas, 361.

**2. Same.**

Where county bonds purported on their face to be issued for a courthouse, but were in fact issued for a jail, contrary to law, and the order of court for their issuance disclosed the illegal purpose, a subsequent purchaser of the bonds was thereby charged with constructive notice of their illegality.

**3. Same—Bonds Void in Part.**

Where a county contracted with a firm for the concurrent erection of a courthouse and a jail, to be paid for in county bonds, but without authority so to do as regarded the jail, the price of the courthouse and of the jail being separately stated but the bonds for the entire work being issued without reference to that feature, such bonds were void in the proportion that the price of the jail bore to the entire work. HUNTER, Associate Justice, dissenting.

**4. Same—Payments Upon No Estoppel if Bonds Void.**

Where county bonds are issued for a purpose not authorized by law, payment of interest thereon for several years will not estop the county from asserting their invalidity.

**5. Same—Payments Are a Ratification, When.**

Where county bonds are issued for a lawful purpose, but the written order of the Commissioners Court authorizing their issuance is silent as to interest and date of their maturity, the action of the county judge in supplying these when making out and signing the bonds is ratified by that of the county in levying an interest tax and paying interest on the bonds for a number of years.

**6. Limitations in Favor of County.**

Limitation begins to run against a debt due by a county from the date of its maturity, and not from the date when the claim therefor was presented to the Commissioners Court and rejected.

APPEAL from Mitchell. Tried below before Hon. GEO. W. SMITH, Special Judge.

*Millard Patterson* and *C. N. Buckler*, for appellant.

*R. H. Looney*, for appellee.

HUNTER, Associate Justice.—The nature and result of this suit are well and fairly stated by appellant's counsel in their brief, from which we copy, substantially as follows:

"On December 5, 1898, the appellant instituted this suit in the District Court of Mitchell County to recover of said county $210 and interest on same from April 10, 1894, the amount of three coupons for $70 each, originally attached to Mitchell County courthouse bonds Nos. 8, 9, and 10; and also $140 and interest from the same date, the amount of two coupons from courthouse bonds Nos. 22 and 23; and also $4000, the principal of fifty coupons of $80 each which fell due on the 10th day of April, 1894, 1895, 1896, 1897, and 1898, originally attached to Mitchell County courthouse bonds Nos. 39, 40, 41, 44, 45, 46, 47, 48, 49, and 50, and interest on the amount of said coupons from the time they matured, respectively.

"Plaintiff alleged that said bonds, with their coupons, were executed and issued by said county, as is recited in the same, for the purpose of erecting a courthouse in said county, and were delivered to Martin, Byrnes & Johnson, being payable on their face to them or bearer, and that plaintiff was the owner and holder of the same for value.

"The county of Mitchell pleaded a general denial, and specially, (1) that said bonds and coupons were never issued by defendant and were not issued by virtue of any order or decree of the Commissioners Court of said county, nor for any legal purpose, and that the same was known to plaintiff; (2) that the coupons which matured April 10, 1894, were barred by the statute of limitations of four years; and (3) that said bonds Nos. 22 and 23 were void, because at the time of issuance the defendant county had already incurred debts for the erection of a courthouse in excess of the amount allowed by law.

"The plaintiff below by a supplemental petition set up that payment of said coupons was never refused by Mitchell County until the year 1898; that every year after the issuance of the bonds described in its petition, Mitchell County had levied a tax, up to 1893, to pay the interest on all of its courthouse bonds and collected the same, and up to the year 1893 caused the interest coupons upon same to be paid, and set up the recital which appears on the face of each of said bonds as to their having been issued under the Act of February 11, 1881, for the erection of a courthouse, etc., and pleaded that defendant is estopped from claiming that said bonds are not valid in the hands of plaintiff. A copy of the bonds was attached as an exhibit to said supplemental petition.

"The appellee filed its supplemental answer, alleging that it repudiated the said bonds and coupons in March, 1894.

"The case was tried January 26, 1899, and resulted in a judgment against Mitchell County on the coupons for 1894 on bonds Nos. 22 and 23, and in favor of said county on all of the other coupons sued upon, the court holding that all of the other bonds and coupons are void; and from this judgment this appeal is taken."

The record discloses the following facts:

On August 10, 1881, Mitchell County had neither courthouse nor jail, and on that day the Commissioners Court of said county entered into a contract in writing with Martin, Byrnes & Johnson for the erection of said buildings, agreeing to pay therefor in 7 per cent annual coupon bonds of the county to run for fifteen years the sum of $11,925 for the jail and $21,325 for the courthouse, making the total sum of $33,250. By the terms of said contract the first payment of $10,000 in such bonds was to be made on the completion of the first story of the jail and the foundation of the courthouse, the second payment of $10,000 in such bonds when the jail was completed and received and the first story of the courthouse up, the remaining payment in such bonds to be made on the completion of both jail and courthouse. An order of the Commissioners Court of August 10, 1881, showed that the court had entered into a written agreement with said contractors for the construction of a courthouse and jail.

On December 21, 1881, the Commissioners Court entered on its minutes the following order: "Ordered by the court that the county judge issue to the jail contractors the first payment of bonds, when such payment becomes due, said bonds to be signed by the county judge and attested by the county clerk, with the seal of the Commissioners Court attached." Bonds numbered 8, 9, and 10, the coupons of which are sued on herein, were issued and delivered under this order to Martin, Byrnes & Johnson, on January 12, 1882.

On July 3, 1882, said Commissioners Court also entered the following order: "The jail being finished and the first story of the courthouse up, it is ordered by the court that ($10,000) ten thousand dollars in bonds be issued to Martin, Byrnes & Johnston, as required by contract." Bonds numbered from 11 to 20, inclusive, were issued and delivered to said contractors under this order, on July 5, 1882.

On April 24, 1883, the said court entered the following order: "It is therefore ordered by the court that the courthouse be and is hereby received from the contractors, and it is further ordered that the sum of thirteen thousand dollars be issued to the contractors, Martin, Byrnes & Johnston, in bonds of one thousand dollars each, and a warrant be issused to them on the courthouse and jail fund for the sum of two hundred and fifty dollars, this being the amount now due the contractors on final settlement. The bonds to be signed by the county judge and attested by the clerk of this court." Bonds numbered from 21 to 33, inclusive, were issued and delivered to said contractors under this order, on April 25, 1883, numbers 22 and 23 of which are sued on herein.

On August 18, 1883, the clerk was directed by an order of the Commissioners Court to correct the date of the Act of the Legislature under which bonds numbered from 21 to 30, inclusive, were issued, as inserted in said bonds, and on December 1, 1883, the same order was made to apply to "all outstanding Mitchell County courthouse bonds," and the

clerk, it seems, made the desired correction by erasing February 21, 1879, and inserting February 11, 1881.

All the bonds issued under the foregoing orders were in the following form:

"UNITED STATES OF AMERICA.

"No......                                                              $1000.

"COURT-HOUSE COUPON BOND.

Mitchell County.

STATE OF TEXAS.

"Know all men by these presents: That the County of Mitchell, in the State of Texas, acknowledges itself indebted unto Martin, Byrne & Johnston or bearer in the sum of one thousand dollars lawful money of the United States of America, which sum the said county promises to pay for value received, at Colorado, Mitchell County, Texas, fifteen years from the date hereof, but redeemable at any time at the pleasure of said county, together with the interest thereon from date at the rate of seven per centum per annum payable annually on the 10th day of April in each year on the presentation and surrender of coupons hereto attached, as they severally become due and payable.

"This bond is issued in accordance with the provisions of an Act of the Legislature of the State of Texas, entitled, 'An Act authorizing the county commissioners courts of the several counties of this State to issue bonds for the erection of a courthouse and to levy a tax to pay for the same. Approved February 11, 1881.'

"In testimony whereof, I hereto affix my official signature and official seal of said county at Colorado, Texas, this 3d day of July, A. D. 1882.

"R. H. LOONEY,

"Judge County Court, Mitchell Co., Texas.

"Countersigned:

"BRANCH ISBELL,                    [Seal.]

"Clerk County Court, Mitchell County, Texas.

"Registered 5th day of July, A. D. 1882.

"A. W. DUNN,

"County Treasurer, Mitchell County, Texas."

These bonds were numbered consecutively from 1 to 33, inclusive, but were dated at the time of issuance, as before stated.

The fifteen annual coupons attached to each bond were in the following form:

"No......                                                              $70.

"The County of Mitchell, State of Texas, promises to pay to bearer seventy dollars at Colorado, Texas, on the 10th day of April, 18.... being interest for one year on bond No....

"R. H. LOONEY,

"Judge County Court, Mitchell Co., Texas."

The blanks were filled with the date of maturity of the interest coupon and the number of the bond.

On February 4, 1884, Mitchell County was again without a courthouse, and on that day the Commissioners Court of said county, by an order duly entered, accepted a bid of Martin, Byrne & Johnston to erect one for said county for $57,000, and on the same day said court caused to be spread on its minutes the contract made with said firm, which set forth at length the work to be done and the consideration to be paid by the county, and in which it was shown and recited that $37,000 of the consideration should be paid in bonds of Mitchell County whenever the work was completed and received by the Commissioners Court. Neither this contract nor any order of the Commissioners Court specified the rate of interest these bonds should bear nor the time they should run, nor whether the interest was payable annually or otherwise; but it was proved on the trial by oral testimony that the Commisisoners Court in fact made and passed the order fixing the rate of interest at 8 per cent per annum, and that the bonds should run for fifteen years, and they were issued by the county judge accordingly, with coupons for the interest payable annually. Of these bonds the appellant held numbers 39, 40, 41, 44, 45, 46, 47, 48, 49, and 50, and the annual coupons thereon of $80 each, due April 10, 1894, 1895, 1896, 1897, and 1898 were sued on herein.

Every year from 1881 to 1893, inclusive, the Commissioners Court of Mitchell County levied a tax of 25 cents on the $100 worth of property in the county, which they called the "courthouse and jail tax," to be applied and which was applied to the payment of the interest coupons on all of the courthouse bonds aforesaid numbered from 1 to 55, inclusive, and by orders of said court the coupons on all of said bonds were paid regularly every year up to and including the year 1893.

The total valuation of property in said county for 1881 was $592,961; for 1882, $1,155,475; for 1883, $2,250,489; and for 1884, $3,118,239.

On March 31, 1894, the Commissioners Court passed an order, which was duly entered on its minutes, declaring all of said bonds void, and that it was the purpose of Mitchell County not to pay the same; but it is not shown that appellant had notice of this order. All the coupons sued on herein were duly presented by appellant to the Commissioners Court for allowance and payment on November 16, 1898, and were wholly rejected and payment refused on November 19, 1898, and this suit was filed December 5, 1898.

On March 11, 1898, appellant filed a petition in the said Commissioners Court requesting said court to order and direct payment of the five coupons for $80 each due April 10, 1894, but the court upon consideration thereof entered an order on May 12, 1898, rejecting the claim, because "no evidence of said indebtedness was presented to the court," and it was also proved on the trial that no coupons were presented to the court at that time.

The learned special district judge who tried this cause without a jury has not favored us with his conclusions of law, but from the brief of ap-

pellee's counsel we infer (as it is there insisted) that the bonds 8, 9, and 10 were held to be void because they were, by the order of the Commissioners Court, "issued to the jail contractors," and at that time no law existed authorizing said court to issue bonds of a .county for the purpose of building a jail; and that the bonds issued under the second contract, of date February 4, 1884, for $37,000, of which numbers 39, 40, 41, 44, 45, 46, 47, 48, 49, and 50, for $1000 each, are a part, were held void and payment of the interest coupons thereof refused, because neither in the contract nor in any order of the Commissioners Court was authority given the county judge to issue bonds bearing 8 per cent interest, payable annually, and to run fifteen years, it being contended by appellee's counsel that they are void because the Commissioners Court never by any order of record authorized the issuance thereof, but that the order, legally interpreted, authorized only the issuance of bonds bearing no interest until maturity, and that no time of maturity was fixed; and if not for these reasons void as to the principal, the coupons thereof would be void because not authorized by the order; and these are the principal questions raised by this appeal, with another of limitation which we will consider after disposing of these.

And first, as to all the bonds issued under the first contract, of date August 10, 1881, for $33,250, for building a courthouse and jail, we are of opinion that they are good only for the amount of $21,325, the cost of the courthouse as shown in the face of the contract, and void as to all the balance, because issued to pay for building a jail, as also shown in the face of the contract, unless the appellant has established by the testimony that it had no notice of the terms of the contract at the time of its purchase; in other words, that it was an innocent purchaser for value without notice that they were issued in part to pay for the building of a jail.

Our Supreme Court, we think, have settled the law in this State that a purchaser of the bonds of any county in Texas must know that the Commissioners Court had authority, by virtue of some valid act of the Legislature, to issue them for the purpose imported on their face; and not only that, but must look to the order of the Commissioners Court by authority of which they were issued, to see if they were issued for the purpose authorized by the act and in accordance therewith, whether the act and the order are referred to in the face of the bonds or not. Mitchell County v. Bank, 91 Texas, 361; Ball v. Presidio County, 88 Texas, 60.

So that, the fact that the bonds on their face showed them to be issued for the purpose of building a courthouse, as in this instance, does not protect the purchaser against any inherent vice or invalidity which would result from the want of legislative authority in the Commissioners Court to issue them, or from what would be discovered by an examination of the order of said court under and by virtue of which they were issued.

Applying this rule in this case, we must hold that appellant had

notice of the orders under and by virtue of which these bonds were issued, and as the order of December 21, 1881, under which bonds numbered 8, 9, and 10 were issued, directing the county judge to "issue to the *jail contractors* the *first payment* of bonds when such payment *becomes due,*" it is evident that the authority given the county judge in this order was not to issue bonds *then,* but *"when the first payment becomes due."* An ordinarily prudent person about to purchase bonds of the county dated after the date of this order would naturally inquire whether the first payment had become due, and the amount thereof, and this would, as naturally, lead him to examine the terms and conditions of the contract, and from these he would learn that the bonds issued thereunder would be void as to the amount of $11,925, and good only to the amount of $21,325; and therefore the purchaser must be held to have known the contents of the contract, and that at that time the law did not allow the Commissioners Court to issue bonds of the county to build a jail, but that it did authorize the issuance thereof to build a courthouse.

Now, all the bonds authorized by this contract have been issued and sold to different persons, and the serious question presented to us is to determine where the loss must fall. Must we hold that all the bonds are invalid in the proportion that $11,925 bears to $32,250? Or that the first bonds issued were valid to the limit of the cost of the courthouse, and the power of the Commissioners Court being then exhausted, the remainder or last issued would be void? Or that the first payment of $10,000, made in bonds numbered from 1 to 10, inclusive, are void, because on the face of the order it appears that they were issued to the "jail contractors?"

All the bonds issued under this first contract purport on their face to be "courthouse bonds," but the order of the Commissioners Court under which the first ten were issued, numbered from 1 to 10, inclusive, shows on its face that they were to be delivered to the "jail contractors" when the first payment on the contract became due. Now the contract shows that both buildings were to be constructed at the same time,—the jail a little in advance, perhaps, of the courthouse,—and this first payment was due "on the completion of the first story of the jail and the foundation of the courthouse." This feature of the contract gives it the appearance of being a payment on both, but the evidence does not establish the value of the work up to this point on either, and because the order directs these bonds to be paid to the "jail contractors," the writer is of opinion that it was intended and understood, and that such is the legal effect of the order, that the first ten bonds were issued to pay for building the jail, and are consequently void. To order them "issued to the jail contractors," is the same as to order them "issued to pay on the jail contract," and the language will bear no other reasonable construction.

The writer is further of opinion that the instrument signed and executed between the Commissioners Court and Martin, Byrnes & Johnston evidences two contracts, one for the building of a jail for the agreed price of $11,925, and the other for the building of a courthouse for the

agreed price of $21,325; but that, because the same parties had agreed to build both houses, both contracts were inserted in the one instrument, but that this fact does not make the two contracts an entirety, but because the considerations named therein are several the contracts are several and the bonds issued to pay the void one are void.

The majority of the court, however, are of opinion that the use of the terms "jail contractors" in the order was not intended to change the terms of the contract under which the payments were to be made. In their view the contract, orders, and bonds are all to be construed together, and when so construed it is evident that the bonds first issued (8, 9, and 10) were issued in payment for work on both courthouse and jail, and that each bond is good in the proportion that the cost of the courthouse bears to the cost of both jail and courthouse. Stated under the rule of proportion, it would be as follows: As $21,325 is to $33,250, so the valid part of each bond is to $1000. That is, each bond for $1000 would be valid for $641.35, and of course the coupons thereof would be valid in the same proportion.

Appellant's counsel insist, however, that because the Commissioners Court ordered the interest coupons on these bonds paid and levied taxes each year therefor, and actually paid them from 1881 to 1893, inclusive, this would estop and preclude the county from disputing their validity. But we can not agree to this proposition. Such acts might properly be held a waiver of all irregularities in the issuance of the bonds, and a ratification of the acts of the officers signing and issuing them, but could not supply power in the Commissioners Court to issue them, in the absence of an act of the Legislature expressly authorizing the Commissioners Court to do so, or otherwise validating them.

This disposes of bonds numbered 8, 9, and 10, and the majority are of opinion that the court erred in holding them wholly void and denying appellant any recovery on the interest coupons thereof, to which the writer dissents as above shown.

There was a second issue of $10,000 ordered to Martin, Byrnes & Johnston on July 3, 1882, but none of these bonds or the coupons thereof are embraced in this suit, and consequently we are relieved of the duty of considering their legal status.

The trial court found the bonds numbered 22 and 23 valid, and there is no complaint of that part of the judgment, but found numbers 39 to 50, inclusive, void, and we are called upon to revise this latter ruling. These bonds were issued under an entirely different contract and different order of the Commissioners Court. They were issued to pay for building a courthouse only, and no question is made on the power or authority of the Commissioners Court to issue them for that purpose to the full amount so issued; but appellee's counsel contend that, inasmuch as neither the order of the court nor the contract fixed the time they should run or the rate of interest, or whether it should be paid annually or otherwise, the county judge had not sufficient authority for issuing them in the form he did, and that therefore they are void.

There is undisputed oral evidence in the record establishing that, in fact, the order of the Commissioners Court as officially passed by that body provided for all these details, and precisely as contained in the bonds, but the order was not so entered by the clerk. It is shown by a bill of exceptions signed by the trial judge and filed by the appellee's counsel after the adjournment of the term, and which for this reason can not be considered by us, that this oral evidence was objected to because incompetent to alter or add to the minutes of the court as entered of record. The admission of this evidence and its legal effect on the order raises a serious question, but one we do not feel called upon to decide, because we have concluded to dispose of the main question involved on another ground. However, in the case of Waggoner v. Wise County, 17 Texas Civil Appeals, 220, we held that, where the order of the Commissioners Court was actually passed to release Waggoner and others from certain vendor's lien notes amounting to about $40,000, and to accept Jamison's notes for the debt extending the time of payment, with a deed of trust on the land instead of the vendor's lien, and the agreement was carried out and acted upon by all parties, it was binding on the county although the order as passed was never entered of record, and a writ of error was denied in that case.

But in that case no order at all on the subject was entered, while here the order was entered but did not contain the necessary details for the guidance of the county judge in fixing on the form and even the substance of the bonds. It did authorize the county judge, however, to issue the bonds of the county in payment of the courthouse debt, so that his authority to issue bonds for that purpose can not be questioned. He, acting under this order, issued the bonds to run for fifteen years, to bear interest at 8 per cent, payable annually, and executed fifteen coupons for the annual installments of interest, which were attached to each bond.

Now, if the oral evidence aforesaid was incompetent, here is an instance of the agent exercising authority in inserting those details beyond what the order gave him; but the evidence is undisputed that from the year 1884 to 1893, inclusive, the coupons of these bonds were presented to the Commissioners Court of Mitchell County every year, and that they levied a tax to pay them, ordered them paid, and they were actually paid, which acts, we think, conclusively ratified every act of the county judge in issuing them, and cured every irregularity of any and every officer or agent in such issuance, and made them good and valid obligations upon the county for all they call for. Supervisors v. Schenck, 5 Wall. (U.S.), 772; Commissioners v. Beal, 113 U. S , 227; Ray County v. Vanzycle, 96 U. S., 687, 688; Evansville v. Dennett, 161 U. S., 443, 444; 15 Am. and Eng. Enc. of Law, 1 ed., pp. 1293, 1294, and cases cited in notes.

We are therefore of opinion that the District Court erred in holding bonds numbers 39, 40, 41, 44, 45, 46, 47, 48, 49, and 50 void, and denying the appellant judgment on the annual interest coupons thereof, unless the coupons on 46, 47, 48, 49, and 50, due April 10, 1894, were barred by the statute of limitations of four years.

On this issue appellant's counsel contend that limitation on claims against a county does not begin to run until the claim is presented to the commissioners court for allowance and payment and is rejected and payment refused, while on the other side it is contended that limitation begins to run from the time the claim is mature, whether presented to the commissioners court and by them rejected or not; and we think this latter view is correct.    True, suit can not be maintained on a claim against a county until it, or some part thereof, has been rejected by the commissioners court, but the claim must be presented at maturity or within such time as that, if rejected, suit may be brought within the time allowed by the statute of limitations, counting from the date of maturity and not from the date the claim was rejected.    This prerequisite to suing a county is a special and wise provision of the statute pertaining to the institution of suits against counties, but was never intended to, and does not, affect the statutes of limitation in any manner whatever; and as no such exception is found in such statutes, we conclude that the bar as to these four coupons was complete after four years from April 10, 1894, and as this suit was not filed until December 5, 1898, said five coupons were barred by the statute of limitation of four years, and no recovery can be had thereon.    McDonald v. Callahan County, 3 Texas Civ. App., 138.

Under the statute it becomes our duty to render such judgment herein as the District Court should have rendered, and we therefore order that the judgment of the District Court herein be reversed, and we here now render judgment in favor of appellant for the proportion of the coupons sued on due for interest on bonds numbered 8, 9, and 10, as indicated herein, and for the full amount of all the other coupons sued on, except the coupons for interest due April 10, 1894, on bonds numbered 46, 47, 48, 49, and 50 (which we hold to be barred by limitation), with interest thereon added at the rate of 6 per cent per annum from the dates of their maturity, respectively, up to the date of the judgment in the District Court, and said total sum to bear interest at the rate of 6 per cent per annum from the date of the District Court judgment until paid, and for all costs of this court and the District Court, to which judgment the writer dissents as above indicated.

*Reversed and rendered.*

### ON MOTION FOR REHEARING.

By some unaccountable oversight we held that limitation barred appellant's action on some of the interest coupons sued on, and neglected to apply it to others in exactly the same condition.    We intended to hold that limitation barred all the coupons sued on which matured on April 10, 1894.    Applying this rule, we hold that the three interest coupons of bonds numbered 8, 9, and 10, which matured April 10, 1894, and also the two coupons of bonds numbered 22 and 23 which matured at the same time, for which judgment was given below, and to which action ap-

pellee makes a cross-assignment of error in his brief in this court, are each and all barred by limitation of four years, the same as all coupons from bonds numbered 39, 40, 41, 44, 45, 46, 47, 48, 49, and 50, which matured April 10, 1894.

We therefore order that the judgment herein be corrected as above indicated, and that in all other respects the motion for rehearing be overruled.

                                                                    *Overruled.*

Writ of error refused.