**GUSSETT et al. v. NUECES COUNTY et al.**
(No. 231–3411.)

(Commission of Appeals of Texas, Section B.
Dec. 21, 1921.)

1. **Counties** ⬤⟳94(2)—**Irregular payments by county treasurer held proper credits where ratified by commissioners' court.**

Payments by a county treasurer for the benefit and purposes of the county in pursuance of his capacity as purchasing agent, made under order of the commissioners' court or upon the requisition of the county judge or commissioners, instead of in pursuance of certificates or warrants, are proper credits in favor of such treasurer if thereafter in due course they are approved and ratified by the commissioners' court, the payments being such as were within the power of the commissioners' court to direct in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1505 and 1507, notwithstanding that article 1509 provides that the county treasurer shall not pay out any money except in pursuance of certificates or warrants.

2. **Jury** ⬤⟳136(6) — **Defendants asking judgment over against each other entitled to six peremptory challenges each.**

Each party to a civil suit in a district court are entitled to six peremptory challenges, and parties defendant asking judgment over against each other are within the rule.

3. **Appeal and error** ⬤⟳1045(1)—**Error in respect to peremptory challenges not reversible where prejudice not shown.**

Where the bill of exceptions fails to show that any objectionable juror was accepted by appellant by reason of the ruling of the court on peremptory challenges, but shows that it did not appear to the court that the party was compelled to take any jurors not acceptable to him nor that the jurors were partial or prejudiced nor that any harm resulted to the party, no reversible error is shown.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Nueces County and others against H. D. C. Gussett and others, wherein Nueces County Drainage District No. 2 was impleaded. Judgment for defendants was reversed by the Court of Civil Appeals (213 S. W. 725), and defendants bring error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed as recommended by the Commission of Appeals.

Dibrell & Masheim, of Seguin, and G. R. Scott, Boone & Pope, and Kleberg, Stayton & North, all of Corpus Christi, for plaintiffs in error.

Terrell & Terrell, of San Antonio, and James M. Taylor, of Corpus Christi, for defendants in error.

POWELL, J. In the fall of 1906, H. D. C. Gussett was duly elected county treasurer of Nueces county. In due course thereafter, he qualified by taking the prescribed oath and filing bond as required by law. He continued to serve Nueces county in that capacity until early in 1917, or for five terms of two years each. During his tenure of office, he filed a personal bond for each two years term. Some sureties signed each bond. In some instances, one or more of the sureties signed only one or more bonds. In no case were the bonds signed by exactly the same people.

At the end of his official career, he turned over to his successor in office the sum of about $52,000, being the amount shown to the credit of the treasurer officially in the First State Bank of Corpus Christi, which was the county depository. The new county judge and commissioners' court thereafter caused an audit of the treasurer's account to be made by an expert accountant, Mushaway. In a rather complimentary report, so far as reference is made to the former officers of the county, he did not charge any shortage in the treasurer's account, but his report finally led to the filing of a suit by Nueces county et al. against Gussett and the various sets of sureties on his several official bonds.

A total shortage of something less than $20,000 was alleged, provided it should be determined that Neuces county drainage district No. 2 be entitled to recover, from the $52,000 in the county treasury aforesaid, the sum of $11,466.48, which it was claiming. On the other hand, if Nueces county should be found not to be indebted to the drainage district, then the shortage in Gussett's accounts would be only something in excess of $6,000.

The plaintiffs in the court below sued each set of sureties for a definite amount, alleging that specific sum to be the shortage for the term covered by the bond executed by them. The aggregate of these claims, as pleaded, was about $20,000. Then, in the alternative, several other prayers were made for recovery, but all upon the alleged theory that it was very difficult to tell when the shortage occurred. In these latter alternative prayers, the county sued the various bondsmen for the entire shortage, or each set of sureties for such part of the shortage as they might be found liable for under the facts in evidence.

The defendant sureties in the trial court not only denied the existence of any shortage, as did Gussett, but asked for reimbursement from the latter and for contribution over against each other. Some of the sureties alleged a defense of limitation.

The drainage district, being impleaded by the county, answered and prayed recovery against the then county treasurer for its

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

alleged deposit of over $11,000, alleging that its deposit was not a part of any shortage in Gussett's accounts. In the alternative, the drainage district asked that it be awarded a sufficient portion of any shortage recovered against Gussett to reimburse it for its deposit.

The case was tried before a jury upon special issues. Many issues were submitted, but the jury's answer to the first rendered unnecessary an answer to any of the others. The jury was charged as follows:

"It is the duty of a county treasurer to receive all moneys belonging to the county from whatever source they may be derived, and pay and apply the same as required by law, in such manner. as the commissioners' court of his county may require and direct, and all sums of money so paid out by a county treasurer under the requirements or direction of the commissioners' court, or paid out by a county treasurer for the benefit of the county under the direction of any member of the commissioners' court or county judge and afterwards approved and ratified by the commissioners' court, must be taken as payment according to law."

Upon the basis of this charge, the following special issue was submitted to the jury:

"Do you find from the evidence that the defendant Gussett, as treasurer of Nueces county, was short in his accounts with said county at the end of the time of his office?"

The jury answered the quoted issue in the negative, and, under instructions of the court, proceeded no further. Judgment was entered, in compliance with said finding of the jury, in favor of Gussett and his sureties. Upon appeal by the county, the judgment of the district court was reversed and remanded by the Court of Civl Appeals. See 213 S. W. 725.

Gussett and his sureties obtained a writ of error, upon proper application therefor, from the Supreme Court, and the case has now been assigned to us for review and recommendation.

Several of the assignments of error sustained by the Court of Civil Appeals relate to the admission of certain testimony which showed that Gussett, for a number of years, as purchasing agent under the commissioners' court of his county, had purchased supplies necessary for the county upon the requisition of the county judge or individual commissioners, without awaiting the issuance of warrants, in order to give the county the benefit of cash prices; and that thereafter his payments of this kind were regularly reported to the commissioners' court at each term thereof, as required by law; that said court upon every such occasion ratified and approved such payments; that such payments, by reason of such ratification and approval, were legal credits in Gussett's favor.

The Court of Civil Appeals held all such testimony erroneously admitted, because irrelevant and immaterial, for the reason that under article 1509 of Vernon's Sayles' Revised Civil Statutes of Texas, the treasurer could be allowed as legal credits such payments only as were evidenced by formal certificates or warrants; that all other payments made by the treasurer, even for the benefit of the county, were invalid; that such invalid payments could not become binding by any ratification of the commissioners' court of the county. If the Court of Civil Appeals be correct in such a construction of article 1509 of the Statutes, then it correctly held the evidence inadmissible. But, if the trial court was correct in its charge to the jury in line with Gussett's contention, and as quoted hereinabove, then the evidence was admissible. We think the trial court correctly charged the jury and that the evidence was properly admitted.

Article 1509, now under consideration, reads as follows:

"The county treasurer shall not pay any money out of the county treasury except in pursuance of a certificate or warrant from some officer authorized by law to issue the same; and, if such treasurer shall have any doubt of the legality or propriety of any order, decree, certificate or warrant presented to him for payment, he shall not pay the same, but shall make report thereof to the commissioners' court for their consideration and direction."

The Court of Civil Appeals says that by virtue of the above statute the county treasurer can never be given credit for a disbursement, under any circumstances, unless paid out under the terms thereof. On the other hand, Gussett's counsel contend that the article of the statute aforesaid does not apply at all to accounts ordered paid by the commissioners' court itself, but only to accounts claimed by other officers. In support of that contention they refer to articles 1505 and 1507 of Vernon's Sayles' Statutes, which read as follows:

"Art. 1505. It shall be the duty of the county treasurer to receive all moneys belonging to the county from whatever source they may be derived, and to pay and apply the same as required by law, in such manner as the commissioners' court of his county may require and direct."

"Art. 1507. The county treasurer shall render a detailed report at every regular term of the commissioners' court of his county of all the moneys received and disbursed by him, of all debts due to and from his county, and of all other proceedings in his office, and shall exhibit to said court at every such term all his books and accounts for their inspection and all vouchers relating to the same, to be audited and allowed."

[1] Counsel argued with much vigor the contention that the commissioners' court, in the conduct of its own business, is not restricted to the warrant method as provided by article 1509; that article 1505 requires the treasurer to pay out money in such manner as the commissioners' court may require and direct; and that article 1507 clearly shows that ordinary vouchers and accounts in general, and not warrants in particular, are contemplated in handling the business of the court itself. We do not think it necessary to a decision of this case to settle the controversy just set out, for, even if it be conceded, for the purposes of the present case, that article 1509 does apply ordinarily to "all" payments by the treasurer, it is still true, we think, as contended by counsel for Gussett, that payments by a county treasurer for the benefit and purposes of the county in pursuance of his designation and capacity as purchasing agent, made under order of the commissioners' court or upon the requisition of the county judge or commissioners, instead of in pursuance of certificates or warrants, are proper credits in favor of such treasurer, if thereafter, in due course, they be approved and ratified by the commissioners' court. Or, in other words, in the case at bar, it was within the *power* of the commissioners' court to direct the payments since they were for a lawful purpose; and, that being true, we think it could ratify the *manner* in which they were made. That is to say, under facts like these, the court itself could correct any irregularities in the manner of payment by approving the expenditure later, and ratifying the treasurer's action.

The Court of Civil Appeals in the instant case does not give us the benefit of a single authority sustaining its view that ratification by the court would not avail to validate payments made without the usual warrants. Nor have we found any such authorities.

On the other hand, we think our position is definitely sustained by the Supreme Court of Texas in case of Boydston v. Rockwall County, 86 Tex. 234, 24 S. W. 272, which was, like the case at bar, a suit upon a county treasurer's bond for shortage in his accounts. The Constitution and statutes required that the questioned disbursement (which was for purchasing of securities out of the school fund) should be made by the treasurer "only upon previous order of the commissioners' court." But, though no such prerequisite order was made, and though the disbursement was made by the treasurer solely upon the direction "of the county judge," the Supreme Court held such disbursement a legal credit because the commissioners' court had subsequently "ratified" the same. The decision in the Boydston Case was in the nature of an affirmative answer to the following certified question:

"When a county judge, in 1889, without any previous order of the commissioners' court, purchased for the permanent school fund of his county seven courthouse bonds of another county, and directed the county treasurer of his county to pay therefor a sum of money in the treasury belonging to the permanent school fund of his county, and the said treasurer did pay upon such purchase said sum, and such bonds were delivered to said county, has the commissioners' court the power to ratify such acts of the county judge and treasurer?"

The court, in the same opinion, in answer to another certified question as to what facts will establish a ratification, speaks as follows:

"A contract made in the name of a commissioners' court by an unauthorized party may be ratified by a formal order; but such order is not ncessary to such ratification. When the fact of the contract came to the knowledge of the commissioners' court, and they elected to hold the bonds or take any other benefit under them, or to carry out its provisions, they ratified it, and the county was estopped to deny its validity. Kneeland v. Gillman, 24 Wis. 42; Peterson v. Mayor, 17 N. Y. 453; Town of Athens v. Thomas, 82 Ill. 259; Tyler v. Trustees, 14 Or. 485; Fisher v. La Rue, 15 Barb. 323."

In the Boydston Case, the commissioners' court had the power to invest the school funds as they were actually invested; therefore, when it ratified the investment made by others for it, the transaction became valid, binding, and legal. So, in the case at bar, the important query is, not as to the manner of payment employed by Gussett, but whether or not his expenditures for lawful purposes were later ratified by the commissioners' court.

The Boydston Case has been followed repeatedly in Texas. For instance, we refer to the following:

In Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291, the manner provided for the sale of school land was illegal. But the Court of Civil Appeals decided that the sale was legalized by subsequent ratification of the county.

In Carter, etc., Co. v. Angelina County, 59 Tex. Civ. App. 310, 126 S. W. 293, it was decided in an identical case with the above that approval by the commissioners' court was a ratification that rendered the transaction legal.

Noel, etc., Co. v. Mitchell Co., 21 Tex. Civ. App. 638, 54 S. W. 284, decides that bonds prepared and sold by a county judge were valid, because ratified by the commissioners' court, although they were not valid under the order authorizing them.

In each of the three cases just cited, application for writ of error was made to the Supreme Court, but in each case the same was denied.

The following language of the Court of Civil Appeals in case of Gallup v. Liberty Co., supra, is very significant:

"The case before us does not disclose a sale beyond the scope and powers of Liberty county or of its commissioners' court, intrusted by the Constitution and laws of the state with its business, but one that the county is expressly authorized to make 'in the manner to be provided by the commissioners' court of the county.' The manner provided by the court was simply illegal. That is all. If the manner it provided had been legal, the sale would have been. Therefore we think the sale, although illegal, under which appellants claim the land in controversy, was such as could be ratified by the county, and that the facts found by the trial court show a full and complete ratification of it."

The Boydston Case has been cited with approval in other cases as follows: Brazoria County v. Padgitt (Civ. App.) 160 S. W. 1170; Brazoria County v. Rothe, 168 S. W. 70; Germo Mfg. Co. v. Coleman County (Civ. App.) 184 S. W. 1064; Galveston County v. Gresham (Civ. App.) 220 S. W. 560. In this last case writ of error was denied by the Supreme Court, and the Court of Civil Appeals had held the county liable, under the facts of that case, even though the commissioners' court had refused to ratify the contract in question. The decision was based upon the ground that the county had continued to accept the benefits of Gresham's services and would not later be heard to deny its liability to pay him therefor.

The commissioners' court of Nueces county, in its general management of the business affairs of the county, authorized the treasurer to act for the court in purchasing supplies, especially for the 65 mules used in road work in the county; it authorized the county clerk to purchase stationery for the various officers of the county; it authorized the commissioner in each precinct to direct certain expenditures in connection with the work being done in his precinct. But all of these expenditures were subject to the later approval of the entire court in session assembled. The undisputed proof is that the treasurer made the regular reports to each term of the court as by law required, bringing in all vouchers, checks, and receipts. The court went into his accounts fully and audited the same. In each instance, the evidence shows that his reports were duly approved. Furthermore, the undisputed proof shows that the county depository, on each of said occasions when the court was in session, exhibited a certified check for the balance due by it to the county as shown by the books of the bank, and that after auditing the treasurer's report the commissioners' court invariably found the bank balance to be correct. The proof further shows that this very bank balance finally went into the hands of Gussett's successor.

The expenditures, even if irregularly made in the beginning, were such as the court had the power to have authorized, as they were all for the benefit of the county. There can be no question as to this. The commissioners' court have full and general charge of the business affairs of the county. Many authorities in support of this proposition are collated, in case of Germo Mfg. Co. v. Coleman County (Civ. App.) 184 S. W. 1063. Not only is this true, but our Supreme Court has decided that such courts have a great latitude of discretion in their management of county finances. In case of Davis v. Burney, 58 Tex. 364, the Supreme Court said:

"From the very nature of the case, the commissioners' court must have considerable discretion in its management of county finance, as to when and how the county indebtedness is to be paid, and in providing the means for payment. In such matters it would be impracticable for the Legislature to descend into the particulars, and undertake to confer express powers upon the court in the management of such a complicated matter in every minute detail. All that was intended by or could have been expected of the Legislature in this regard, would be to confer upon the court such general powers by express legislation, as, when supplemented by such as will be necessarily implied, will attain the purposes of county government, and secure its efficient and economical administration."

The reading of articles 1505, 1507, and 1509 of our Revised Civil Statutes must convince any one, we think, that, in any event, it was the intention of our lawmakers to invest in the commissioners' court itself the power to finally determine whether or not payments made by the treasurer were proper and lawful. Even article 1509, relied on by the Court of Civil Appeals, in the case at bar, expressly provides that the court must settle claims which are presented to the treasurer and which he thinks doubtful. The court, itself, has final authority, and its approval is conclusive, even though it was given after the expenditure had been made. Of course, if the treasurer pays out money without a warrant or other authority of the commissioners' court, he necessarily takes a great risk, for the court may not ratify his payments.

The justice of the rule laid down by our Supreme Court in the Boydston Case, supra, appeals to every one. To show that this is true, we find that even the expert accountant employed herein, and the court itself, allowed Gussett certain claims and credits which he showed them were just, even though they had not been paid in accordance with article 1509 of the

Statutes. It is interesting to note, in this very connection, that Mushaway, expert accountant aforesaid, claimed a shortage only on the theory that the treasurer could not exhibit to him warrants (article 1509) for all his expenditures. The treasurer moved into the new courthouse in 1915, and he had kept all of his checks and receipts from that time forward. He showed them to the expert auditor for the new court, and many of his items during this period of time were allowed even by this accountant and this court. Gussett explained that he could not show the new auditor all his checks and receipts for money expended during his entire tenure of office, for in moving into the new courthouse in 1915 as aforesaid, he had destroyed all the old papers; that he wanted to keep the new office clear of all old papers and rubbish. Furthermore, he said as all those old accounts had been approved by the commissioners' court anyway, he did not consider them important. Gussett claimed that if he had still been in possession of all his old papers covering his entire tenure of office, he could have obtained credit even from the new auditor and the court for all the alleged shortage. We do not think it was necessary for Gussett to obtain the approval of his accounts by the new court, or its expert accountant. But, showing that his contention above was probably correct, it is very interesting to note that this same accountant had, prior to 1915, audited Gussett's books for the period of 1909–1911. At that time Gussett had all his receipts and papers, and the auditor going over his records, etc., reported a discrepancy or shortage for the period mentioned of only about $1,000, and more than one-half of this was a matter of excess commissions which had been in dispute. Gussett very promptly returned this amount of money to the county. But, now, when his papers had been lost, the county sues him for a shortage of several thousand dollars, covering that same period of time which Mushaway had investigated on the prior occasion.

The jury having found, under a proper charge and in the light of evidence properly before them, that there was no shortage in Gussett's accounts, we think other assignments of error are rendered immaterial, except the one relating to jury challenges allowed by the trial court and which we shall hereafter discuss. There were no assignments in any of the courts attacking the verdict and judgment as being unsupported by or contrary to the evidence.

The trial court allowed each of the five sets of sureties six challenges. The county objected to that action and excepted to it. The Court of Civil Appeals held that the trial court erred in so ruling, and that such error required a reversal of the case. We think the Court of Civil Appeals erred in its holding. The trial court, in approving the bill of exceptions in this connection, noted the following qualification:

"The pleadings show that all of the defendants who were sureties were asking for reimbursement from Gussett and for contribution over against each other. Some of them, as shown by the pleadings, alleged a defense of limitation, and others of them plainly were not entitled to such defense.

"The plaintiffs did not state or show to the court that they were compelled to take jurors they would not otherwise have taken but for the ruling of the court; and it does not and did not appear that they were compelled to take any jurors that were not acceptable to them, or that the jurors selected were partial and prejudiced, or in any manner incompetent or disqualified, or that plaintiffs were in any manner prejudiced or harmed by the ruling of the court."

We are at a loss to understand how the Court of Civil Appeals, if, as we assume, it read the pleadings in this case, could have stated the following:

"In this case, there were no issues to be settled among the defendants, but all they sought was to defeat the claim of appellants."

It is quite true they were making a common fight on the county, and, in view of the verdict finally rendered, the other issues did not become important. But, had the defendants in the trial court lost this common fight, there would have been a vigorous contest among the sets of sureties on the remaining issues. This is perfectly apparent to us, as it was to the trial court, and we think the latter correctly ruled on this point.

[2] It is well settled in Texas that each party to a civil suit in a district court shall be entitled to six peremptory challenges, and parties defendant asking judgment over against each other are within the rule. See Waggoner v. Dodson, 96 Tex. 6, 68 S. W. 813, 69 S. W. 993; National Bank v. S. A. & A. P. Ry. Co., 97 Tex. 201, 77 S. W. 410; Texas & Pacific R. Co. v. Stell, 61 S. W. 980; I. & G. N. v. Bingham 40 Tex. Civ. App. 469, 89 S. W. 1113; Hogsett v. Northern Texas Traction Co., 55 Tex. Civ. App. 72, 118 S. W. 807.

[3] Again, it is equally well settled that where the bill of exceptions fails to show that any objectionable juror was accepted by appellants by reason of the ruling of the court on peremptory challenges, but on the contrary shows that it did not appear to the court that plaintiffs were compelled to take any jurors that were not acceptable to them, nor that the jurors were partial or prejudiced, nor that plaintiffs were in any manner prejudiced or harmed by the ruling of

the court, no reversible error is shown. In other words, even if the court had made an error, it was the duty of attorneys for the county to show they had been prejudiced thereby. Otherwise, no reversal should follow. See Waggoner v. Dodson, 96 Tex. 6, 68 S. W. 813, 69 S. W. 993; Wolf v. Perryman, 82 Tex. 112, 17 S. W. 772; City of San Antonio v. Reed (Tex. Civ. App.) 192 S. W. 549; I. & G. N. v. Bingham, 40 Tex. Civ. App. 469, 89 S. W. 1113; Sweeney v. Taylor Bros., 41 Tex. Civ. App. 365, 92 S. W. 442; M., K. & T. v. Steele, 50 Tex. Civ. App. 634, 110 S. W. 171.

In connection with the question of jury challenges, counsel for the county, in an argument filed in the Supreme Court, in opposition to the application for writ of error filed by Gussett, used this significant language:

"The third of the contentions of the attorneys for plaintiff in error is in regard to jury challenges. We have carefully read the authorities cited by them and reconsidered the question involved. In frankness to the court, we admit that most of the authorities in Texas are against our contention. In equal frankness, we state our judgment to be that those authorities are not founded on common sense or common practice."

Upon request of Gussett and his sureties, upon exception duly filed, the trial court dismissed the drainage district from the case.

The Court of Civil Appeals held this was error. We do not think it necessary to pass upon the correctness of that ruling. The jury had before it evidence that the treasurer had received these deposits from this drainage district; that he had been charged with those items on his books. They found, however, that there was no shortage in Gussett's accounts. Therefore there was no recovery against Gussett, and the question of apportioning such a recovery did not become material. If the drainage district is entitled to any recovery from the county, it is from the present treasurer, and the more than $52,000 turned over to the latter by Gussett was very much more than sufficient to pay the claim of the drainage district. Whatever remedy the district has is clearly against the present treasurer and county officials.

It follows, from what has been said, that we think the county had a fair trial under the law by a jury legally constituted, and that its verdict against the county should be upheld.

Therefore we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.