McWILLIAM YOUNG and others v. J. O. GRIFFITH and another.

*Action to Recover Land—Argreement to Convey Land—Power of Executors—Evidence.*

1. On the trial of an action to recover land, it appeared that in 1841, J and R agreed in writing to convey to W, upon the payment of the purchase money, certain lands, the boundaries of the same as set out in the agreement being definite ; afterwards, upon the payment of the purchase money, J and the executors of R (then deceased) executed a deed to W ; the *locus in quo* was embraced in the deed but it was disputed as to whether or not it was embraced in the agreement ; *Held,*

(1) That the agreement to convey was the joint contract of J and R.

(2) That the executors of R had no power to convey his estate in any land not embraced in the agreement.

(3) That admissions in writing of J as to what boundaries were intended to be conveyed by the agreement were not admissible as evidence against the representatives of R.

2. In such action the provisions of the Code do not prevent the plaintiff from demanding a specific performance of the agreement on the part of the representatives of R, notwithstanding the action was instituted prior to 1868.

(*Jackson* v. *Beaman,* 6 Jones 44 ; *Rowland* v. *Rowland,* 2 Ire. 61. *Gaither* v. *Gibson,* 63 N. C. 93, cited and approved.)

CIVIL ACTION to recover Possession of Land, commenced in Buncombe and removed to and tried at Fall Term, 1876, of MADISON Superior Court, before *Henry, J.*

The facts embodied in the opinion of this Court by Mr. Justice RODMAN are deemed sufficient to present the points decided. See same case, 71 N. C., 335. Verdict and judgment for plaintiffs. Appeal by defendants.

*Messrs. W. H. Malone* and *Busbee & Busbee,* for plaintiffs. *Mr. J. H. Merrimon,* for defendants.

RODMAN, J.  On the 13th of October, 1841, Robert Love and James R. Love were seized in fee of a large body of land in Buncombe and other counties, and agreed in writing with Wesley Young (whom the plaintiffs represent) to sell and convey a certain piece of land at fifty cents per acre to be paid in hogs at or about Christmas, in 1842. The boundaries of the land to be conveyed appear on the face of the agreement to be indefinite, although perhaps they may be shown to be certain by a survey.  The number of acres included in the boundaries given was evidently unknown to the parties, and it must have been contemplated that it should afterwards be ascertained by a survey.

From a recital in a deed made on the 29th of September, 1859, from James R. Love, and the executors of Robert Love, who was then deceased, it appears or is admitted that on the 25th of December, 1842, Young had paid $1,025, and as far as can be gathered from the deed this was the whole price.  After the death of Robert Love, James R. Love, as surviving partner, recovered a judgment against Wesley Young upon the agreement, which was paid.  In the view we take of this case, it is not material whether the whole price was paid before the death of Robert Love or not.

It was admitted that this deed of 1859 embraced within its boundaries the land in dispute, but it was contended by the defendants that the agreement of 1841 did not; and that the executors of Robert Love had no power under the act, Rev. Code, ch. 46, § 37, to convey his estate in any land not embraced in the agreement.

For the purpose as must be supposed of defining more clearly what lands were intended to be covered by the agreement of 1841, the plaintiffs offered in evidence a writing without date, signed by J. R. Love, and professing to state his recollection of the boundaries of the land intended to be conveyed by the agreement.  The description

of the boundaries of the land given in this writing differs in terms from that of the agreement, but whether it covers other land or only the same land, we are unable to say. We must assume however for this description that it enlarged or in some way varied the location of the land to the advantage of the plaintiff, as otherwise he could have had no motive for offering it in evidence. It was admitted to be read after objection, and the defendant excepted.

The question of its admissibility is a somewhat nice one. The general rules as to the reception of admissions are familiar. When several persons are *jointly* interested in the subject matter of the suit, the admissions of one respecting it are evidence against all. Taylor on Evidence, § 674; *Whitcomb* v. *Whiting*, 1 Smith L. C., 555. So of joint contractors. Taylor on Evidence, §§ 680, 681; 2 Ire. 61; 6 Jones, 44.

But in general the admissions of one part-owner or co-tenant of property will not be evidence against the others. Taylor, Ev. § 680; Wharton Ev., *Fox* v. *Waters*, 12 A. and E. 43.

In the present case James R. and Robert Love, were tenants in common, having equal shares, and not joint tenants of the land, which they contracted to sell; and if this had been recited in the agreement it would probably not be held a joint contract for the performance of which in its entirety each was bound, but as the several contract of each to convey his undivided share in the common land. But it does not appear in the agreement what share or estate each claimed ; each agrees to convey the whole. On the authorities and on reason we are required to consider the contract of the Loves with Young as their joint contract.

But this does not settle the question as to the competency of the admissions of J. R. Love. The evidence was competent against J. R. Love, and a Court of Equity would

enforce against him a specific performance of the agreement as varied by his written admission of its intent, but although it is probable that each of the co-tenants intended by the agreement to convey his share in the same land, yet it may be that they understood the description differently, and that Robert would not have executed it if he had understood it in the sense in which James admits he did. The admissions of one person can never bind another unless he is actually or presumptively the agent of the other to make the admission.

One tenant in common cannot sell the land of another, and if it follows that he has no authority to make an admission, the effect of which if received in evidence against the other, will be to enlarge or vary the boundaries of a piece of land which they had previously sold, and thus in effect to sell land without authority in writing. This case must be considered an exception to the rule that one person jointly interested may bind another by his admissions. This argument supposes Robert to have been alive when the admission was made. If it was made after his death it would be still less competent, for the joint interest was then severed. Taylor Ev. § 681. We think this exception must be sustained.

This ruling alone would entitle the defendant to a new trial. But we think it is not the duty of a Court of Appeals to put its decision entirely on some small error of the Court below, and thereupon send the case back for a new trial, protracting litigation. But we think it may, when it is possible to pass on some vital question and arrest the litigation, or where that is not possible, it may explain what are the decisive questions in the cause, so that the parties may direct their attention to these. We were invited by counsel to do this, and all the questions which apparently can arise were ably and laboriously discussed.

The plaintiff Young's claim to the share of Robert Love

is founded entirely on the agreement of 1841. Under that he became entitled to an equitable estate in the land covered by it. It is said, however, for the defendant, that even if it were admitted that this agreement covered the land in dispute, yet in the decision in *Gaither* v. *Gibson,* 63 N. C. 93, the plaintiff could not recover, as this action was begun before 1868. That case may be distinguished from the present, in this, that it had been heard upon an equitable defence attempted to be set up at the trial, and this Court said that the defendant could not avail himself of it in that way, but must bring his action for specific performance, and he might obtain an injunction in the mean time. In the present case when it goes back there is nothing to prevent the plaintiff from filing a supplemental complaint for specific performance in the present action, and if he shall make a proper case the Superior Court will direct a conveyance from the representatives of the estate of Robert Love, and enjoin all persons having or claiming the legal title in privity with him from setting it up against the plaintiff. This doctrine is not opposed to *Gaither* v. *Gibson,* but is apparently the doctrine of that case applied to one where the equitable owner is the plaintiff, and if the plaintiff can not have that remedy he may find material difficulties in any other.

Supposing the plaintiff to have put himself in a condition to avail himself of his equitable estate as a cause of action, the material question would arise for finding, viz., in what land did the plaintiff have an equitable estate. For the legal estate which the Court would recognize as existing in him by virtue of the agreement of 1841, and at the date of that agreement, would be as to Robert Love exactly that described in the agreement.

It has been seen that the admission of James R. Love was not competent as against the representatives of Robert Love. The deed of 1859 could not operate to convey any land of Robert Love which he had not contracted to

convey, because the act empowers executors to convey only such land.

Nor could this deed convey the estate of James R. Love in any land not covered by the agreement, because all his lands not sold prior to the equity suit in Buncombe county had been sold under the decree in that suit before 1859.

If these views be correct, as we think they are, the only question in controversy is seen to be this,—were defendants at the commencement of this action in possession of any land covered by the agreement of 1841, as explained and located by any evidence which may be proper for that purpose? The affirmative of this proposition is on the plaintiff. The Judge erred in not requiring proof of it from him, and in excluding evidence offered by the defendant to the contrary.

It is unnecessary to say that plaintiff can not recover on proof of a co-tenancy in the *locus in quo*, for there is no evidence of an actual ouster.

Judgment reversed and *venire de novo.* Case remanded to be proceeded in according to law. Let this opinion be certified.

Error.

PER CURIAM.                    Judgment accordingly.