MCWILLIAM YOUNG and others v. J. O. GRIFFITH and others.

*Deed—Contract to convey land—Judge's Charge—Ejectment.*

1. Where land is described in a contract to convey, as " beginning on J 's line and T. and E. and W., and to the......of a ridge joining said W's land, and running a parallel line with a course extended to the top of

said ridge, all the land within said boundaries," the inference that the language surrounds no definite space and gives a part only of the enclosing lines, is not so clear as to warrant a withdrawal from the jury of the inquiry whether sufficient proof may not be adduced to distinguish and set apart the territory; especially where a subsequent deed specifying the outlines corresponds with the contract in the number of acres and price of the land.

2 . A suit which determines the obligation to pay for land under a contract of sale, also establishes the right of the vendee to have the land by a specific performance.

3. Where the jury are charged that if they are satisfied such contract covers land in possession of defendant the plaintiff is entitled to recover, a ruling that the contract is too vague and uncertain in describing the land to show authority in an executor to convey, cannot be sustained because calculated to mislead the jury.

4. *Semble*—Where an action is begun when the right to recover depends upon the possession of the legal title and retains until final judgment this feature of the former practice, it is doubtful if defendant can set up title by relation to a former decree in equity, if his deed was in fact subsequent to that of plaintiff.

(*Testerman* v. *Poe*, 2 Dev. & Bat., 103; *Richardson* v. *Thornton*, 7 Jones, 458; *Farmer* v. *Batts*, 83 N. C., 387; *Davis* v. *Evans*, 5 Ired., 525; *Presnall* v. *Ramsour*, 8 Ired., 505, cited and approved.)

CIVIL ACTION to recover land tried at Fall Term, 1879, of MADISON Superior Court, before *Graves, J.*

There was a verdict in favor of defendants, and from the judgment thereon the plaintiffs appealed.

*Mr. W. H. Malone,* for plaintiffs.

*Messrs. McLoud, Davidson* and *Battle & Mordecai,* for defendants.

SMITH, C. J.   This action begun in the year 1861, is for the possession of a tract of land formerly belonging to Robert Love and James R. Love, under whom both parties claim, and must conform as far as practicable to the new rules of practice and procedure.   C. C. P., § 8.

On the trial of the issue, the plaintiffs in support of their title exhibited an executory agreement executed on October 13th, 1841, with seals, by the said Robert and James R. Love to Wesley Young, the ancestor of plaintiffs, for the purchase by the latter, for the consideration and on the terms therein expressed, of a tract of land thus described: " Beginning on Jesse Young's line and Thomas Young and Edward Wilson and George Woody and to the ......... of a ridge joining said Woody land, and running a parallel line with a course extended to the top of said ridge, all the land within said bounds."

They also produced a deed bearing date September 29th, 1859, from said James R. Love in his own right, and himself and others named, executors of Robert Love, deceased, to Wesley Young, which, for the consideration $1,025, stated to have been paid on the 25th of October, 1842, conveys in fee " all that tract or parcel of land lying in the county of Yancey in the state of North Carolina," and particularly setting out its boundaries as containing 2050 acres, which it is conceded embraces the land in dispute. They also showed the transcript of a record of a suit instituted on January 1st, 1859, in the superior court of law of Haywood county by James R. Love, survivor of the partnership firm of which himself and the testator, Robert, were members, against Wesley Young to enforce his liability under the agreement for the residue of the purchase money unpaid, from which it appears that upon the finding of the jury, upon the contested issue raised, judgment was recovered at September term, 1859, by the plaintiff, James R. Love, for the sum of $1,417.86, whereof $797.50 is principal money, and that execution issuing thereon was returned satisfied to the succeeding term.

The defendants derive their title under a decree of the court of equity of Buncombe county entered on April 18th, 1857, by consent, in a suit at the instance of the heirs and

devisees of Robert Love against James R. Love, his execu-
tor, for a settlement of the testator's estate, by virtue of
which all the undisposed of lands held by the deceased and
his co-tenant, James R. in common, were sold to the defend-
ants, and, after report, confirmation and order for title, on
June 8th, 1862, conveyed to them by the clerk and master.
The deed, conforming to the terms of the decree, gives the
boundaries of the land and excludes from its operation in
express words such parts thereof within those boundaries,
as had by the owners been previously sold.

The principal matter in controversy seems to have been
as to the sufficiency of the descriptive words used in the
agreement to designate and identify the land, and its effi-
cacy in creating an objection which the deed of September,
1859, recognizes and undertakes to fulfil. If it binds the
*vendors*, as it was decided in the action for the purchase
money it did bind the vendee, and the obligation is mutual,
then an *equitable estate* was created by force of the contract,
converted by the deed into a *legal estate* afterwards, which is
outside of the authority conferred by the decree and of the
terms of the deed made to carry it into effect. If it does not
so bind, and the plaintiffs' right originated in the deed to
their ancestor, the title of the defendants, although perhaps
not affecting the issue in this possessory action, must ulti-
mately prevail by reason of its relation to the date of the
decree and its effect in sweeping away any intermediate vol-
untary conveyances, as in the case of sales under execution.
*Testerman* v. *Poe*, 2 Dev. & Bat., 103; *Richardson* v. *Thornton*,
7 Jones, 458.

When the case was here on a former appeal, Judge Rod-
man, in delivering the opinion and adverting to the agree-
ment, remarks, that "the boundaries of the land to be con-
veyed appear on the face of the agreement to be indefinite,
although perhaps they may be shown to be certain by a
survey. The number of acres included in the boundaries

given was evidently unknown to the parties, and it must have been contemplated by the parties that it should be afterwards ascertained by a survey." 79 N. C., 201. The language employed in the instrument to describe the land would seem to surround no definite space and to give a part only of the enclosing lines. But the inference is not so clear as to warrant a withdrawal from the jury of the enquiry whether sufficient proof may not be adduced to distinguish and set apart the territory as described and understood. The deed in specifying its outlines and the number of acres it contains, corresponds with the contract of which it is in affirmance and discharge, in the price per acre to be paid and in the aggregate sum recited to have been paid in 1842, a coincidence strongly pointing to a common object. It is true that a description, manifestly so imperfect as not to admit of identification, cannot be aided by intrinsic evidence or intent, the sole office of such proof being to ascertain where are the objects called for, and thus to fit the description to the thing described. *Farmer* v. *Batts*, 83 N. C., 387. There is obscurity if not repugnance in the statements of the case upon this point. Testimony was heard by the jury for the purpose of locating the land, under the descriptive language of the agreement, and the jury were directed "if there was sufficient evidence to satisfy them that the paper writing of 1841 covered the land or any part of it in possession of defendants, they should find for the plaintiffs "— an instruction of which the appellants cannot complain. Yet when the agreement was offered to show legal authority in the executors to convey and thus connect it with the deed, an objection based on " its vagueness and want of certainty," (by which we understand to be meant its intrinsic and incurable defect, as a contract) was sustained by the court, and thus really nothing left for the jury to pass upon and determine.

There is another aspect of the case presented: The result

of the action at law, notwithstanding the resistance made, in charging Wesley Young with the balance of a specific sum due on his covenant, fixes necessarily also the quantity of the land bought, for the one measures and regulates the other, the sale being at the rate of a half dollar per acre; and as it conclusively determines the legal obligation of the vendee to pay, it equally establishes his right to have the land, by a specific performance of the contract. This adjudication, although made after the decree, decides the precedent liability incurred before any adversary interest had accrued under the proceedings in equity, and which follows the transfer to the defendants. This equitable estate in the plaintiffs' ancestor is saved alike from the operation of the decree and the subsequent deed, both of which are confined to unsold lands held by the tenants in common. There is consequently no conflict in the title derived by the opposing parties from a common source, and the charge of the court that the deed of James R. Love and the executors of Robert, being subordinated to the decree of 1857, passed no estate unless there was a pre-existent contract of sale, cannot be sustained, since if not itself erroneous it was calculated to mislead the jury in finding their verdict. The action at law supports the validity of the agreement as binding upon both parties, and its effect is to raise an equitable estate in a definite extent of territory ascertained by the sum to be paid, and if necessary its limits fixed by actual survey. This area if within the defendants' boundaries is excluded from them.

Again, the action was begun when the right to recover depended upon the possession of the legal title, and as we interpret the Code, retains until final judgment this feature of the former practice. The plaintiff cannot succeed unless his cause of action existed when he commenced his suit, and correlatively he ought not to fail if he then had a cause of action. The deed to Wesley Young is in time prior to

that of the defendants and vested the legal estate in him, unless the deed to the defendants by relation to the decree divested it as of that date and passed it to them. It admits of question whether the doctrine of relation extends so far as to allow an effective defence in the present suit. The rule governing a sheriff's deed seems to be equally applicable to a deed executed by a commissioner who acts under the mandate of a court. " Whatever relation to the time of the sale a conveyance may have for some purposes," says Chief Justice RUFFIN, referring to a sheriff's deed, in *Davis* v. *Evans,* 5 Ired., 525, " it cannot be carried to the unreasonable extreme of proving the title in an action that was brought before the deed was made." This remark was made in referring to an action of ejectment, and it is held to be equally applicable to an action of trespass, in the subsequent case of *Presnall* v. *Ramsour,* 8 Ired., 505. In both of them, as in that before us, the deed was executed after the commencement of the suit, and the difference between them consists in the fact that the deeds were there offered by the plaintiff to maintain his action, and here, by the defendants to defeat the action on by proof of title in themselves. Without directly deciding the point, it is suggested in order to direct the attention of counsel to the question upon another trial.

For the reasons given and the errors pointed out, there must be a new trial, and it is so adjudged. Let this be certified.

Error.                                    *Venire de novo.*