### BRAZORIA COUNTY v. PADGITT et al.

(Court of Civil Appeals of Texas. Austin. Oct. 15, 1913. Rehearing Denied Nov. 26, 1913.)

1. PUBLIC LANDS (§ 173*)—LANDS OF STATE— SCHOOL LANDS — SALE — AUTHORITY OF COUNTY COMMISSIONERS—DELEGATION.

Const. art. 7, § 6, authorizing a sale of school lands, the title to which is vested in a county as trustee for the public schools, in the manner to be provided by the commissioners' court of the county, did not authorize such court to delegate the exercise of such power to commissioners; and hence a sale of such land by commissioners appointed was voidable.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*)—SCHOOL LANDS— CONVEYANCE—VOID DEED—ESTOPPEL.

Where the commissioners' court of a county, without authority, appointed commissioners to sell school land belonging to the county, and, after the commissioners had sold the land and executed deeds therefor, with full knowledge of the facts, ratified the conveyance by accepting the proceeds of the sale and passing the accounts of the commissioners with reference to the same, etc., the county was estopped to deny the validity thereof.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

3. PUBLIC LANDS (§ 173*)—SCHOOL LANDS— INVALID CONVEYANCE.

Whether a voidable deed of county school lands, made by commissioners appointed by the commissioners' court, in excess of jurisdiction, to sell the land, was subject to ratification, depended on whether the conveyance was one which the commissioners' court itself could have legally made.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

4. PUBLIC LANDS (§ 173*)—LANDS OF STATE— SCHOOL LANDS—POWER TO SELL—MISAPPROPRIATION OF PROCEEDS.

Const. art. 7, § 6, authorizes a sale of school lands by the commissioners' court of a county holding title thereto, and provides that the proceeds shall be immediately invested for the benefit of the school fund. Held that, though a prospective purchaser of school lands from a county had knowledge that the commissioners' court did not intend to use the proceeds of the sale as provided by law, such knowledge did not deprive the court of the power to sell nor invalidate a sale when made.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

5. PUBLIC LANDS (§ 173*)—LANDS OF STATE— SCHOOL LANDS — SALE — APPOINTMENT OF COMMISSIONERS—AUTHORITY.

An order of the commissioners' court of a county appointed two persons as commissioners to sell school lands belonging to the county, authorizing them to survey and subdivide the same, execute deeds, etc., the order also providing that all necessary expenses, including traveling expenses, surveyor's and investigation fees, and all incidental charges, should be paid to such commissioners, and that they should also receive "and retain" reasonable commissions on all sales made by them, which commissions should be not only a reasonable commission on all cash received, but also on the amount of all notes taken or received in part payment for the lands or any part thereof, and granting a special lien on all such cash payments and notes taken or received by them to secure their commissions, compensation, and expenses. Held that, since the commissioners' court had no power to permit any part of the proceeds of such sales to be applied to any other purpose than the public schools of the county, the words quoted in the order would be treated as surplusage, and the order construed as providing for legal payment of the commissioners' commissions and expenses out of the county's general fund, and not out of the proceeds of the sale of the lands.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Appeal from District Court, Coleman County; John W. Goodwin, Judge.

Trespass to try title by Brazoria County against Mrs. Willie Day Padgitt and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Louis J. Wilson, W. T. Williams, and Masterson & Rucks, all of Angleton, for appellant. Snodgrass, Dibrell & Snodgrass, of Coleman, for appellees.

JENKINS, J. This is a suit of trespass to try title, brought by appellant to recover land in Coleman county, Tex.

Appellees, in addition to a plea of not guilty, alleged they claimed under a deed executed by E. N. Wilson and A. J. Burke, Jr., who were appointed by the commissioners' court of Brazoria county to sell said land; that said deed had been ratified by said court; that their title was res adjudicata by reason of certain proceedings in the probate court of Travis county, and alleged their willingness to pay any balance of the purchase money that might be found to be due on said land. They also pleaded improvements in good faith.

### Findings of Fact.

(1) The land in controversy was Brazoria county school land, patented to the school commissioners of said county April 27, 1848.

(2) The commissioners' court of said county, on November 16, 1876, made and entered upon the minutes of said court the following order: "Commissioners' Court of Brazoria County, Texas. Thursday Nov. 16, 1876. Presiding: E. N. Wilson, County Judge; A. J. Burke, Jr., Com. Prect.; Walter Wormly, Co. Com.; Geo. W. Thomas, County Com. Whereas, by virtue of section 6, art. 7 of the Constitution of the state of Texas, entitled 'Education—The Public Free Schools—It is ordained that all lands heretofore granted to the several counties of this state are of right the property of said counties, and it is therein, among other things provided, that each county may sell and dispose of the same in whole or in part in the manner to be provided by the commissioners court of the county,' and the proceeds thereof when sold shall be held by said counties alone as a trust for the benefit for public schools therein. And whereas, many counties are availing themselves of said provision of the Constitution and thereby disposing of their land; and whereas, the lands belonging to the county of Brazoria are unproductive and yielding no income to said county for the maintenance or support of the public free school, and it is deemed advisable, judicious and to the interest of said county that said lands should be sold or disposed of in whole or in part as is thereby authorized by said provision of the state Constitution: Therefore, be it resolved by the commissioners' court of Brazoria county, Ervin N. Wilson and A. J. Burke, Esqrs., be and they are hereby appointed and constituted commissioners to make sale and conveyance on behalf of said county of Brazoria and on behalf of the commissioners' court of said county of Brazoria, Texas, of all lands heretofore granted to said county of Brazoria for education or schools, and said E. N. Wilson and A. J. Burke, Jr., are hereby fully authorized and empowered to sell said lands in whole or in part for cash or on time, taking notes for deferred payments, payable to them as commissioners as aforesaid, secured by lien on the land, for which said notes are given, at such price or prices as in their judgment may deem reasonable and

proper, and upon such sale or sales good and valid deeds of conveyance of said land to make and deliver in behalf of said county of Brazoria and in behalf of said commissioners' court of said county of Brazoria to the purchaser or purchasers thereof and said Ervin N. Wilson and A. J. Burke, Jr., commissioners as aforesaid, be and are hereby fully authorized and empowered to employ a surveyor or surveyors, if they so desire and determine, and to cause said lands to be surveyed and subdivided in tracts of such size and description as they may deem advantageous, and said Ervin N. Wilson and A. J. Burke, Jr., be and are hereby authorized to sell said land in whole or in part to such person or persons for such price or prices, on such terms as they may determine upon. Hereby giving and granting to the said Ervin N. Wilson and A. J. Burke, Jr., full power and authority to exercise freely their discretion in the manner of said sales and the terms thereof, and all deeds executed and delivered by said Ervin N. Wilson and A. J. Burke, Jr., as commissioners, as aforesaid, shall be binding and conclusive and effectual in behalf of said county of Brazoria and upon the commissioners' court thereof. And it is expressly provided that all reasonable and necessary expenses incurred by said Ervin N. Wilson and A. J. Burke, Jr., including traveling expenses, surveyor's fees, investigation fees, and all other incidental expenses connected therewith, shall be reimbursed them by said county of Brazoria. And Ervin N. Wilson and A. J. Burke, Jr., shall be and are hereby authorized to receive and retain reasonable commissions and compensation upon all sales made by them of said lands or any part thereof. Said compensation to be not only a reasonable commission upon all cash received by them but also a reasonable commission upon the amount of all notes, or notes taken or received by them in part payment for said lands or any part thereof, and a special lien upon all cash payments and upon all notes taken or received by them as aforesaid, is hereby granted to the said Ervin N. Wilson and A. J. Burke, Jr., to secure their commissions, compensation, and expense aforesaid. A certified copy of this decree recorded in each county in which said lands are situated, shall be deemed and held full evidence of the authority of said Ervin N. Wilson and A. J. Burke, Jr., in the premises, and all sales of said land made by said Ervin N. Wilson and A. J. Burke, Jr., commissioners as aforesaid, and all acts of said commissioners in relation thereto shall be and are hereby decreed valid, binding and conclusive on the commissioners' court of said Brazoria county and upon said county of Brazoria county."

(3) On April 15, 1878, said Wilson and Burke, as commissioners for Brazoria county, sold said land to W. H. Day for the consideration of $500 cash, and his promissory

note for $3,324.55, payable ten years after date, with interest at the rate of 10 per cent. per annum, payable annually, and executed a deed therefor, retaining the vendor's lien to secure the payment of said note. Said deed recited that ·it was executed by virtue of the order above set out, and a copy of which was attached to said deed and made a part thereof.

(4) On November 12, 1878, said Wilson and Burke made a written report of said sale to said commissioners' court in words and figures as follows:

"The State of Texas, County of Brazoria.

"Be it remembered that on the 12th day of November, A. D. 1878, there was begun and holden a regular term of the county commissioners' court for the county of Brazoria. And the following business was transacted:

"Present and presiding, E. N. Wilson, Co. Judge. Commissioner A. J. Burke, Pct. No. 2; Commissioner Walter Wormly, Pct. No. 1; W. H. Sharp, Clerk, by J. W. Yerby, Dep. Chas. Temstall, Constable.

"It is ordered that the report of the commissioners for the sale of Brazoria county school lands this day, may be and is hereby approved and that the said commissioners turn over to the treasurer the balance of money on hand as is therein shown, to wit, the sum of one hundred and seventeen 55–100 dollars, and that said report be recorded in the minutes of this court.

"To the Hon. Commissioners Court of Brazoria County:

"The undersigned commissioners appointed for the sale of Brazoria county school lands have to report sale of one league and 23 labors of land situated in the N. W. corner of Coleman county to W. H. Day at forty-five cents per acre. Payments five hundred dollars cash and note at ten years for the balance, with interest at ten per cent. payable annually on the first day of January of each year at the office of the county treasurer of Brazoria county and in default of the payment of said interest at said time and place so specified, the whole of said note to become due and payable; a vendor's lien being reserved upon the land for the purchase money. With power to foreclose in default of the payment of the interest on the note. The land has been on the market for sale for near two years in as public a manner as possible without advertisement, this offer has been held off for a long time by the commissioners in the effort to obtain a better one, but none has offered. One of us, Mr. Burke, visited the land, and was absent about four weeks, spending a week or ten days in riding over and examining the lands and endeavoring to make an estimate of their value. The tract fronts on the Colorado river just opposite and above the mouth of the Concho and extends from Runnels Co. line about two miles and a half down the Colorado on the upper line there is a small tract of about probably sixty acres arable lands down on the upper line of the lower league is another small valley tract of about one hundred acres the tract run back from the river to the hills crossing a rocky creek, and on the bank of the creek is another small tract of tolerably good land. Altogether in the whole tract there is less than 200 acres of land that will ever be worth anything for cultivation and this in three small tracts, the rest is rocky hills and prairie dog towns value less for any purpose for all time except for pasturage and for this purpose who we sold to bought—buying the three leagues owned by Ft. Bend county, just adjoining these at the same price for pasturage of sheep. We are satisfied that the price obtained is a fair and reasonable one and fully as much as the land will ever be worth. We annex statement of payment and net amt. to the credit of the school fund.

1 League & 23 labors land, 8,499 acres at 45c $3,824 55

| | | |
|---|---|---|
| Note of W. H. Day | $3,824 | 55 |
| Cash to Co. Treasurer | 117 | 55 |
| Com. on sale | 382 | 45 |
| | $3,824 55 | $3,824 55 |

"All of which is respectfully submitted.
  "Adw. J. Burke, Jr.,
  "E. N. Wilson,
    "Commissioners.
"Brazoria, Nov. 12, '78."

(5) On November 15, 1878, the commissioners' court approved said report of sale and entered an order to that effect on its minutes.

(6) On January 30, 1882, Asa E. Stratton was duly and legally appointed county judge of Brazoria county, vice E. N. Wilson, resigned.

(7) On February 17, 1882, the commissioners' court of Brazoria county, by an order entered upon its minutes, instructed E. N. Wilson to turn over to said Asa E. Stratton, county judge, all bonds, notes, and cash in his hands, arising from the sale of Brazoria county school lands, and take said Stratton's receipt therefor, and file the same with the county clerk, which receipt when so filed should be a full release of said Wilson for all such bonds, notes, and cash.

(8) W. H. Day having died, J. L. Driscol, on July 23, 1881, was appointed administrator of his estate in the county court of Travis county, and duly qualified as such.

(9) On March 15, 1882, said Stratton presented said note of said Day to said administrator, properly verified as a claim against said estate, secured by the vendor's lien on said land, and said note for the principal sum of $3,324.55, with 10 per cent. interest from January 1, 1881, together with the said vendor's lien, was allowed by said administrator as a just claim against said estate.

(10) After being allowed by said administrator as aforesaid, said note, with said allowance indorsed thereon, was filed by the

county clerk of Travis county in the papers in said administration and was presented by said Stratton to the county judge of Travis county, and by him on May 16, 1882, examined and approved, and the same was duly and legally docketed on the claim docket of said court in said administration.

(11) All interest on said note was paid to the county treasurer of Brazoria county from the date of the execution of the same to the time of the final payment thereof.

(12) On March 12, 1890, Mrs. Mabel Day, the surviving wife of W. H. Day, deceased, paid to the commissioners' court of Brazoria county the principal of said note, together with all interest due thereon, and the said court, through the county judge of said county and three of the county commissioners, by order of said court, executed to Mrs. Day aforesaid, and to her daughter, the appellee, Willie Day Padgett, a release of the vendor's lien retained in said deed to W. H. Day.

(13) Mrs. Mabel Day, surviving wife of W. H. Day, deceased, died prior to the institution of this suit, and appellee, Willie Day Padgett, is the only heir of said W. H. and of said Mabel Day, deceased.

(14) Appellant did not tender nor offer to pay appellees any part of the principal or interest received for said land.

(15) The district court, trying the case without a jury, rendered judgment for the defendants, appellees herein, from which judgment an appeal has been duly perfected to this court.

### Opinion.

[1] 1. The order set out in the second finding of fact above was not sufficient to authorize Wilson and Burke to sell the land and execute a deed thereto as they undertook to do, for the reason that the commissioners' court only was authorized to make such sale, and in doing so it acted as trustee for the county, and could not delegate its discretionary powers to an agent. Logan v. Stephens Co., 98 Tex. 283, 83 S. W. 365; Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291.

[2] 2. But while said deed when executed was voidable by reason of lack of power on the part of said Wilson and Burke, it was ratified by the commissioners' court of Brazoria county, by reason of the facts specifically set out in the findings of fact herein. It is a well-established principle of law that where a person executes a deed for another without authority to do so, and the person for whom such deed was executed, with full knowledge of all the facts connected therewith, ratifies the same, he is estopped to deny the authority of the agent, and the deed becomes in law his deed, as fully as if it had been executed by him. This is applicable to a county as well as to an individual. Gallup v. Liberty County, supra; Boydston v. Rockwall County, 86 Tex. 237, 24 S. W. 272.

[3] 3. It is contended by appellant that the deed in this case was not subject to ratification. That depends upon whether or not it was one which the commissioners' court could itself have legally made. A contract which a party could not have legally made for himself is not subject to ratification. Such transactions, though in the form of contracts, are not in fact such, and cannot become contracts in a legal sense by ratification. Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 29.

[4] 4. The point insisted upon by appellant in support of its contention that the deed to Day was not subject to ratification is that the order authorizing Wilson and Burke to execute said deed showed upon its face an intention to misapply a part of the proceeds of the sale, by paying the same to said parties as compensation for making the same. It is not contended that Day suggested or induced such misapplication, or in any wise actively participated therein. There was no collusion as to this between Day and said agents, nor between Day and the commissioners' court. As the deed, by reason of its ratification by the commissioners' court, must be treated as having been originally made by said court, the question is: Would the fact, if such was the fact, that Day knew, at the time he received such deed from the court and paid the purchase money therefor, that the court intended to misapply a part of the proceeds, have rendered said deed void? If the power to sell depended upon the apparent purpose to which the proceeds were to be applied, the question must be answered in the affirmative; otherwise we think it should be answered in the negative. For example: The title to an undivided one-half interest in community property is in the children of a deceased wife. The husband has the right to sell the same for the purpose of paying community debts. By here is a mere naked power, which depends for its exercise upon the existence of community debts, and, if there are no such debts, the power does not exist. Hence a purchaser from the surviving husband must ascertain at his peril the existence of such debts. In the instant case the title was in Brazoria county and it was authorized to sell the land in such manner as should be determined by its commissioners' court. Section 6, art. 7, Constitution of Texas. Of course, such sale must be for money, cash or on a credit, as clearly implied by the manner in which the proceeds are directed to be invested. When such proceeds were received by the court, it was its duty to thereafter invest the same as directed by the Constitution; but we do not think that its purpose not to discharge its duty in this respect, even though such purpose be known to the purchaser, would deprive the court of the power to sell. In our opinion, such power did not depend upon the intention of the court to do its duty in reference to the

proper investment of the funds coming into its hands by reason of such sale. This case stands upon a different footing from the cases of Dallas County v. L. & C. Co., 95 Tex. 200, 66 S. W. 294; Tomlinson v. Hopkins County, 57 Tex. 572; and Pulliam v. Runnels County, 79 Tex. 363, 15 S. W. 277. In those cases the court had no power to sell for the consideration received.

[5] 5. But if we are wrong in our construction of the law as set forth in the preceding paragraph of this opinion, still we think the contention of appellant that the deed to Day could not be ratified by the commissioners' court must be overruled, for the reason, as we construe said order, it did not contract to pay Wilson and Burke a part of the proceeds of sales that might be made by them. It is true, the words "and retain" suggest the construction contended for by appellant. But is this the only reasonable construction that can be placed upon said order? In answering this question we must look to the entire instrument, and, if by so doing we find that it admits of two constructions, one of which renders the instrument legal, and the other illegal, the former must be adopted. Foard County v. Sandifer (Sup.) 151 S. W. 524. It was 'the duty of the commissioners' court to turn all of the proceeds of such sales into the county treasury, and thereafter to invest the same as directed by the Constitution. Until the contrary clearly appears, it will not be presumed that the commissioners intended to violate their duty, and that they entered into a contract so to do. Tucker v. Streetman, 38 Tex. 71; Williams v. Talbot, 27 Tex. 159; Jenkins v. Chambers, 9 Tex. 167; Poor v. Boyce, 12 Tex. 445; Portis v. Hill, 30 Tex. 529, 98 Am. Dec. 481.

The commissioners' court had the legal right to compensate Wilson and Burke for their services in making sales of school land, out of the general fund. The fact that such compensation is called a "commission" does not prove a contrary intention. Matagorda County v. Casey, 49 Tex. Civ. App. 35, 108 S. W. 476. With the exception of the words "and retain," there is nothing in the order to indicate an intention to pay Wilson and Burke otherwise than out of the general fund. That the commissioners knew their duty in this regard is apparent from the first part of the order, in which they point out the specific article of the Constitution under which they were acting, and quote therefrom the declaration that the school fund and the proceeds thereof shall be held "alone as a trust fund for the benefit of public schools." The contract does not specify what commission was to be received by Wilson and Burke, for which reason it appears, from a reasonable construction of said order, that the only way in which they could receive any compensation was to present their account to the commissioners' court and have the same allowed; or, if rejected, to establish the same by suit in a court of competent jurisdiction. In either event such account could have been legally paid only out of the general fund. That such a contingency was contemplated appears from that portion of the order which gives Wilson and Burke "a specific lien upon all cash payments and upon all notes taken or received by them." A lien is an incident of debt and is inconsistent with ownership. In view of what is above stated, we think the words "and retain" should be treated as tautology, which is so common in legal documents, especially in those relating to contracts; and in view of the rule of law which requires instruments to be so construed as to make them legal, if they reasonably admit of such construction, we think said order should be construed as a contract to pay Wilson and Burke a reasonable compensation out of the general fund for their services in making a sale or sales of Brazoria county school land, to be measured by the amount received by them in cash and in notes.

In construing said order we must look alone to the language of the same, and not all to the action of the court after the deed had been made and the purchase money paid, or secured to be paid by the execution of the purchase-money note.

6. The appellee insists that the presentation of the purchase-money note to the administrator of the estate of W. H. Day, deceased, and having the same allowed as a claim against said estate, together with the vendor's lien to secure its payment; the presentation of the same to the county judge, and having the same allowed by him; the filing of the same with the county clerk, and having the same placed upon the claim docket—was res adjudicata of the power of the commissioners' court to make the deed to Day, and that the subsequent payment of said note and the release of the vendor's lien gave him a perfect title to the land in controversy. There are authorities which seem to support this view. Articles 2026 and 2031, Rev. St. 1911; Neill v. Hodge, 5 Tex. 489; Williams v. Robinson, 63 Tex. 576; Eastland v. Williams, 92 Tex. 113, 46 S. W. 32; Nichols y. Dibrell, 61 Tex. 539; Norton v. Wochler, 31 Tex. Civ. App. 522, 72 S. W. 1025; 23 Cyc. 1292, 1294, 1306; Lake County v. Platt, 79 Fed. 567, 25 C. C. A. 87; Young v. Griffith, 84 N. C. 715. However, as we hold that the commissioners' court had power to execute the deed, and as by ratifying the deed executed it made it its own, it is not necessary that we should determine the point as to res adjudicata.

7. Had the deed to Day been voidable, and had appellant brought a suit in equity to set the same aside, it would have devolved upon it to tender back at least so much of the purchase money and interest thereon as it admittedly received, and for 35 years has appropriated to its public school fund. As

was said by Mr. Justice Neill in Gallup v. Liberty County, supra, "the education of the children of Texas did not demand the sacrifice of public integrity."

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.