J. D. BOYDSTON ET AL. v. ROCKWALL COUNTY.

No. 64.

**1. County Judge—Ratification—Act Without Authority.**

When the governing body of a municipal corporation is empowered to do an act purely administrative in its character, it may ratify such act when done by one without authority. The purchase of bonds of another county by a county judge on account of school fund, without authority of the Commissioners Court, may be ratified............... 237

**2. Investment of County School Funds—Exchange of Securities.**

The Act of April 4, 1887, chapter 140 of Laws of Twentieth Legislature, page 134 (Sayles' Civil Statutes, article 986m), providing for the reinvestment of school funds by sale of bonds and purchase of others under prescribed limitations, does not restrict the general power of the County Commissioners Court over the investment of the school fund. An accumulated fund in the county treasury to the credit of the school fund will not be presumed to have reached the treasury from the sale of bonds under this act so as to be subject to its restrictions in the investment of it ........................................ 238

**3. Commissioners Courts May Invest School Funds.**

Under the Constitution as amended in 1883, Commissioners Courts have authority to invest money received from sale of county school lands in county bonds. This authority is not expressly given, but seems to be assumed by the legislation upon the subject....................... 239

**4. Ratification.**

The Commissioners Court could ratify the unauthorized act of the county judge in buying the bonds of another county on account of the county public school fund..................................................... 239

**5. Same.**

A formal order by the County Court was not necessary to render valid the act of buying the county bonds. When the contract came to the knowledge of the Commissioners Court, and they elected to hold the bonds or take any other benefit under them, or to carry out its provisions, they ratified it; and the county was estopped to deny its validity ......................................... ..................... 240

CERTIFIED QUESTIONS from Court of Civil Appeals for Fifth District, in an appeal from Rockwall County.

*R. E. Chandler* and *Henry C. Coke*, for appellants.—1. A municipal or quasi municipal corporation may ratify the unauthorized acts of its

agents and officers, if the acts so ratified are within the corporate power. If the act done without previous authority is one that the corporation could have authorized, then it is one the doing of which the corporation may ratify.   Day Co. v. The State, 68 Texas, 533; Mech. on Pub. Offices and Officers, secs. 527, 528, 533, 534, 535, 554, 555; 19 Am. and Eng. Encycl. of Law, 471–477, and notes; 2 Herm. on Estop. and Res Adj., secs. 1086, 1223, 1225; 1 Dill. on Mun. Corp., sec. 463.

2.  A municipal or quasi municipal corporation, as to matters within the scope of its powers, may be estopped upon the same principles and under the same circumstances as natural persons.   Herm. on Estop. and Res Adj., secs. 1222–1224; Kneeland v. Gilman, 24 Wis., 42; New Athens v. Thomas, 82 Ill., 259; Peterson v. Mayor, 17 N. Y., 453; 92 N. Y., 363; Boone County v. Railway, 139 U. S., 684.

3.  He who avails himself of the advantage arising from the act of another in his behalf, assumes all the responsibility incident to such act.   If a principal knowingly accepts the fruits and benefits of an agent's act, he will not afterwards be heard to say that the act was unauthorized.   Mech. on Pub. Off., sec. 548.

4.  The county of Rockwall had authority through its Commissioners Court to purchase county bonds with the proceeds of the sale of its county school lands.   Const., art. 7, sec. 6, as amended in 1883; Sayles' Civ. Stats., art. 986m, sec. 1; Cool. on Const. Lim., 98–101.

*Word & Charlton* and *Joseph Cox*, for appellee.—1.  The court did not err in sustaining a demurrer to appellants' answer.   Rev. Stats., arts. 1526, 1527; Colorado County v. Beethe, 44 Texas, 450; Nolan County v. Simpson & Co., 74 Texas, 218; Britton v. Fort Worth, 78 Texas, 227; Pulliam v. Runnels County, 79 Texas, 370; City of Bryan v. Page, 51 Texas, 532; San Antonio v. French, 80 Texas, 575; Sayles' Civ. Stats., art. 986m, secs. 1, 2, 3.

2.  Rockwall County is a subdivision of the State, and held the permanent school fund in trust for the State; and after default by her county treasurer, and after liability attached on treasurer's bond, the subsequent acts of Rockwall County officers could not create an estoppel nor in any way release the liability of the sureties on the bond of the treasurer. Saunders v. Hart, 57 Texas, 10; City of Bryan v. Page, 51 Texas, 534; San Antonio v. French, 80 Texas, 575.

3.  If the Commissioners Court had the power to ratify an investment of permanent school fund wrongfully made, it could only be done at a regular term of court, with full court present, by an order duly entered on the minutes of the said court.   Sayles' Civ. Stats., art. 986m, secs. 1, 2, 3; Pulliam v. Runnels County, 79 Texas, 370.

4.  The method of administering the finances of the county is fully provided by statute, and no requirement of the statute can be dispensed with

in the making or ratifying of a contract.    Nolan County v. Simpson & Co., 74 Texas, 221.

GAINES, ASSOCIATE JUSTICE.—In this case the following questions are certified for our determination, by the Court of Civil Appeals for the Fifth Supreme Judicial District.

Question First: " When a county judge, in 1889, without any previous order of the Commissioners Court, purchased for the permanent school fund of his county seven court house bonds of another county, and directed the county treasurer of his county to pay therefor a sum of money in the treasury belonging to the permanent school fund of his county, and the said treasurer did pay upon such purchase said sum, and such bonds were delivered to said county, has the Commissioners Court the power to ratify such acts of the county judge and treasurer ?"

Question Second: " Where it appears that the fund so invested was permanent school fund of the county, but from the inaccuracy in which the records of such county were kept it does not appear from what source such fund was derived, do the provisions of the act of the Legislature entitled 'An act to provide for the sale of a certain class of bonds and a reinvestment of their proceeds,' approved April 4, 1887 (Acts of Twentieth Legislature, page 104), govern and provide for the method of such investment ?"

Question Third: " If the second question should be answered in the negative, then under section 6 of article 2 of the Constitution of Texas as amended, has the Commissioners Court any authority to invest such permanent school fund ?"    ("Article 2 " in the question propounded is a clerical mistake.    Article 7 was evidently intended.)

Question Fourth: " If the County Commissioners Court has the power under the Constitution and laws to invest the permanent school fund in county bonds, did such court have the power to ratify an investment of such funds made by the county judge without the previous order of such court authorizing such investment ?"

Question Fifth: " If question fourth should be answered in the affirmative, then when in the purchase of such bonds the county judge, in his official capacity, executed a due bill for a balance due on the purchase of such bonds, and the treasurer received such bonds as a part of the permanent school fund of the county, and they have ever since been held by the county; and when it had been the universal custom in such county for the county judge to make investments in bonds for the permanent school fund; and when the Commissioners Court and each member thereof knew of such investment, and all the other bonds purchased for such county were purchased in that way; and when, on the 12th of November, 1889, the treasurer reported to the Commissioners Court in session the condition of the permanent school fund—embracing these seven bonds—

and said court, with the knowledge of such purchase, in open court approved his report, and the same was filed in the office of the Superintendent of Public Instruction at Austin; and when such county treasurer became insane, and on February 18, 1890, the Commissioners Court directed the county clerk to take charge of all the county funds, including said bonds, and afterwards appointed a new treasurer, who took charge of the same, and executed to such Commissioners Court, after a thorough examination by them of such funds, including said seven bonds, a receipt for the same as a part of the permanent school fund of the county; and when the Commissioners Court, after a thorough examination of the books and accounts of the first treasurer, approved the same; and when the new treasurer received the annual interest on such bonds, paid the obligation given by the county judge for the balance on such bonds, and formally reported to the Commissioners Court such annual interest and payment, and the possession by him as such treasurer of the said seven bonds as part of the permanent school fund, and said court, and each member thereof, with knowledge of all the facts, approved such report; and when, on February 9, 1891, the Commissioners Court sent the treasurer to the county from which such bonds had been issued to collect the interest upon the same; and when the county treasurer, on November 9, 1891, reported to said Commissioners Court the condition of the permanent school fund, embracing (with a number of other bonds) the said seven bonds, and the said court, with a full knowledge thereof, approved said report; and when the said county, on April 29, 1891, brought suit against the vendor of such bonds, seeking to recover of him the value of the same, on the ground that he had sold the same to said county, falsely representing their validity and value, and said suit is still pending; will such facts constitute a ratification or estoppel against the county in a suit upon the bond of the first treasurer for the money paid out by him for said seven court house bonds?''

1. We answer the first question in the affirmative. When the governing body of a municipal corporation is empowered to do an act, one purely administrative in its character, such as to make a contract, and to appoint an agent for that purpose, it may ratify such act when done by one without authority, who purports to act in its behalf. 1 Dill. on Mun. Corp., sec. 463, and note; 19 Am. and Eng. Encycl. of Law, 471; Mech. on Pub. Off., sec. 534; 1 Beach on Pub. Corp., sec. 696.

Our Constitution and statutory laws empower the Commissioners Court to invest the money belonging to the permanent school fund of the county in the bonds of other counties in this State; and we think when the power to make a contract is given to such a body, it carries with it authority to appoint an agent with power at least to enter into an agreement, subject to the ratification of the court.

2. The act referred to in the second question reads as follows:

"(1) Any county at any time having its school funds derived from the sale of its county school lands invested in the bonds of the United States, of this State, or of any county, shall have authority to sell these bonds when, in the opinion of the County Commissioners Court it shall be deemed for the best interest of the fund, and invest the proceeds in its own or any other county bonds duly and lawfully issued.

"(2) Such sale and reinvestment shall be made only when the proceeds of the sale can be reinvested in such county bonds bearing the same or greater rate of interest, and having the same or a longer time to run before their maturity; and no commissions shall be paid to the county judge or any other officer for making such sale or reinvestment; and the said court shall never pay a higher price for the bonds in which it is proposed to reinvest such proceeds than the price at which such other bonds were sold.

"(3) The order for the sale and reinvestment shall be made by the County Commissioners Court at some regular term thereof, when there is a full court present, and not less than four in number shall concur in said order, the names of those concurring being spread on the minutes of said court." 1 Sayles' Civ. Stats., art. 986m.

This statute does not restrict the general power of the court over the investment of the school fund. It was intended to confer a special authority to do a particular thing in a certain contingency. It contemplates the exchange of an existing investment of the fund, or of a part of the fund, for another investment which in the opinion of the court should be deemed more desirable; and it seems to us that in order to carry into effect the power granted, two agreements must be entered into, one contingent upon the other: first, an agreement for the sale or the redemption of the existing securities; and second, for the purchase of the new bonds.

The act was merely intended to authorize the substitution of new securities for old; and it is clear that no accumulation of funds from that source was intended. It may be that in pursuance of the statute the proceeds of the sale of bonds intended for a reinvestment might come into the treasury, but if so, they would be there for a special purpose, and could remain but for a very short period of time. When it is shown, therefore, that there is money in the county treasury belonging to the permanent school fund, and it does not appear from what source it accrued, we are of opinion that the presumption is, that it is either the direct proceeds of the sale of the county school lands or money paid upon matured securities, and not a fund realized from a sale of bonds made by virtue of the authority conferred by the act in question. Hence we think the statute quoted does not govern the method of investment.

3. Article 4036 of the Revised Statutes directs that the school lands belonging to the counties of the State may be sold in such manner as the Commissioners Courts of such counties may provide, and that the pro-

ceeds of the sales should be invested in the bonds of the United States or of the State. This was in pursuance of original section 6 of article 7 of the Constitution. Indeed, that section makes the same provision. It was, however, amended in 1883, so that it now reads, in part, as follows: "Said lands, and the proceeds thereof when sold, shall be held by said counties alone as a trust for the benefit of the public schools therein; said proceeds to be invested in the bonds of the United States, the State of Texas, or counties of said State, or in such other securities and under such restrictions as may be prescribed by law." Neither original section 6 nor the amended section, nor article 4036, expressly say that the investment of the permanent school fund shall be made by the Commissioners Courts, but that such was the legislative construction is shown by section 1 of the Act of April 23, 1879 (Laws 1879, page 150); and we think it clear that such courts should exercise that authority. There is nothing to indicate that the power was intended to be granted to any officer or other body; and we think it was contemplated that the court which was intrusted with the sale of the lands should execute the law as to the investment of the proceeds. We are of opinion, therefore, that the amended section was intended to confer authority upon these courts to invest the fund in county bonds.

"Under such other restrictions as may be prescribed by law" means that the Legislature might throw restrictions around the investment, and not that it was bound to do so before the power to make the investment could be exercised. The word "may" ordinarily signifies permission, and not command. Such is its evident meaning when applied to another member of the same sentence. It was not intended to make it mandatory upon the Legislature to provide for an investment "in such other securities," but to confer power upon it to make such a provision. For these reasons we answer the third question in the affirmative.

4. We answer the fourth question also in the affirmative.

5. In Reese v. Brown, 67 Texas, 318, it was held, that an order of the Commissioners Court auditing and allowing a claim under the Act of April 2, 1883 (Laws Eighteenth Legislature, page 41), must be entered of record upon the minutes of the court, and that the endorsement of the county judge upon the voucher was no evidence of such an allowance, in a proceeding by mandamus to compel the payment of the claim. But that was a quasi-judicial proceeding, and a judgment entered upon the minutes was the proper evidence of the allowance. The fifth question propounded presents a mere matter of a ratification of a contract. A contract made in the name of a Commissioners Court by an unauthorized party may be ratified by a formal order; but such order is not necessary to such ratification. When the fact of the contract came to the knowledge of the Commissioners Court, and they elected to hold the bonds or take any

other benefit under them, or to carry out its provisions, they ratified it, and the county was estopped to deny its validity. Kneeland v. Gillman, 24 Wis., 42; Peterson v. Mayor, 17 N. Y., 453; Town of Athens v. Thomas, 82 Ill., 259; Tyler v. Trustees, 14 Ore., 485; Fisher v. La Rue, 15 Barb., 323.

The case of Bryan v. Page, 52 Texas, 532, is not in conflict with these views. That was a question of an implied contract, and no question as to a ratification is discussed in the opinion. In that case 1 Dillon on Municipal Corporations, section 373 (first edition), is cited in support of the court's conclusion. But that author, in the section first above cited, says: "Municipal corporations *may ratify* the unauthorized acts and contracts of its agents and officers which are *within the scope of the corporate powers, but not otherwise.* Ratification may frequently be inferred from acquiescence after knowledge of all the material facts, or from acts inconsistent with any other supposition. The same principle is applicable to corporations as to individuals." 1 Dill. on Mun. Corp., sec. 463, 4 ed.

It is accordingly ordered, that this opinion be certified to the Court of Civil Appeals of the Fifth Supreme Judicial District.

Delivered December 7, 1893.