

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

March 15, 1939

Honorable Thomas R. Chandler
County Attorney
Robertson County
Franklin, Texas

Dear Sir:

Opinion No. 0-237
Re: Validity of the Robertson County
delinquent tax contract

This is in answer to your letter of January 25, 1939, to which you attached copy of a delinquent tax contract dated May 26, 1937, between Robertson County and Horace Walker, under the terms of which the latter was to collect taxes by suit, and otherwise, for Robertson County. In your letter you ask the following questions:

"QUESTION 1:

Would a delinquent tax contract awarded by a Commissioners' Court be valid under the following state of facts?

All members of the Commissioners' Court being present, on the vote to award the contract, one commissioner voted, "No", two commissioners voted, "Yes", the other commissioner registered "present and not voting"; the County Judge presiding did not vote. All members of the court however signed such contract after the County Judge ruled or declared the vote in favor of awarding the contract.

"QUESTION 2:

In Section VIII of the contract the following exception as to the period of termination is here quoted:

"Except the contractor shall be allowed six months in which to prosecute this final judgment suits filed

> prior to December 31, 1938, ter-
> minating the date of this contract."

Since the waiver of the former County At-
torney could cover only his term, and the pres-
ent County Attorney has not waived, did the
Commissioners' Court exceed its power in stip-
ulating the above exception or provision?

"QUESTION 3:

Could the present County Attorney now take
charge of the suits that were filed by the con-
tractor prior to January 1, 1939 (December 31,
1938, terminating date of contract)?

"QUESTION 4:

Does the contractor have the right to a
13% commission on any recovery in the settle-
ment of a tax suit after December 31, 1938?

"QUESTION 5:

Would time be considered the essence of
this contract?

"QUESTION 6:

Could said contractor continue to receive
commissions on collections made by Tax Assessor-
Collector after December 31, 1938?

"QUESTION 7:

Could said contractor receive commissions
from the payment of delinquent taxes after De-
cember 31, 1938; and if so, at what rate?

"QUESTION 8:

Bearing in mind Sections XVI, VIII and VII
of said contract. At the time of letting the
contract, the contractor made representations
to Commissioners Court that he would guarantee
the collection of $100,000.00 in delinquent
taxes by December 31, 1938, if they would award
him the contract; and that he would place his
commissions in escrow as guaranteed. But since
the 31st day of December, 1938, has arrived and
passed and the said contractor has failed to

collect the $100,000.00 he had guaranteed to do by the expiration date of said contract, December 31, 1938, (and to be exact, only a little less than $90,400.00 has been collected by December 31, 1938.) Would you consider this contract breached?"

We will first endeavor to answer your Question No. 1.

Article V, Section 18, of the Constitution of Texas, after providing for the election of four commissioners in each county, provides as follows:

"* * * The County Commissioners so chosen with the County Judge, as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed."

There is no constitutional provision or statute stating what number of votes or what majority is necessary in order for the commissioners' court to act. Article 2343 of the Revised Civil Statutes of Texas provides as follows:

"Any three members of the said court, including the county judge, shall constitute a quorum for the transaction of any business, except that of levying a county tax."

However, this Article does not help us in answering this question because there was a quorum present in this case; in fact, the entire personnel of the court was present. As we view it, the question we must decide is as follows:- Is a majority vote of the commissioners voting, some being present and not voting, all that is necessary to authorize the commissioners' court to act; or is it necessary that a majority of all those present vote for the action before the court can act?

There are no Texas appellate court cases directly on this question, and there is a great conflict among the authorities from other states.

In the case of Lawrence vs. Ingersoll, 88 Tenn. 52, 12 S.W. 422, 6 L.R.A. 308, decided in 1889, the Supreme Court of Tennessee held that a majority of those present on a board of education must vote affirmatively before the board could act; but in the case of Rushville Gas Co. vs. City of Rushville, 121 Ind. 206, 23 N.E. 72, 6 L.R.A. 315, also decided in 1889, the Supreme Court of

Indiana held that when a quorum of a city council was present that a majority of the votes cast (some being present and not voting) authorized the council to act. In a foot note to the case of Lawrence vs. Ingersoll, _supra_, in Volume 6 of L.R.A., the following is said:

> "This case and the one next following, Rushville Gas Co. vs. Rushville, post. 315, by their sharp conflict add interest to some questions which do not often come before the courts.

> "The weight of authority is to the effect that a majority vote need not be a majority of all those present, if it has a majority of those voting and a quorum is in fact present."

The rule as laid down in Lawrence vs. Ingersoll, supra, is followed in Township of Inavale vs. Bailey, 35 Neb. 455, 55 N.W. 465; Buell vs. Buckingham, 16 Iowa 284; and People vs. Harrington, 63 Cal. 257; whereas the contrary rule as laid down in Rushville Gas Co. vs. Rushville, supra, is followed in Launtz vs. People, 113 Ill. 137; Lawrence County vs. Lawrence Fiscal Court, 191 Ky. 45, 229 S.W. 139; and State vs. Yates, 19 Mont. 239, 47 Pac. 1004.

Although there are no Texas appellate court cases directly on this question, there are two cases that should be mentioned, and those are the cases of State vs. Etheridge, (Tex. Comm. App.) 52 S.W. (2d) 628; and State vs. City of McAllen, (Tex. Comm. App.) 91 S.W. (2d) 688.

In the case of State vs. Etheridge, _supra_, the court held that in a proceeding under Article 961 of the Revised Civil Statutes, which provides that certain cities "* * *" may accept the provisions * * *" of Title 28 of the statutes "* * * by a two-thirds vote of the council of such city * * *" that by virtue of the words of the statute it was necessary in order to pass the order of acceptance that two-thirds of the entire council, and not just two-thirds of those present and voting, must vote for it. This case merely construed Article 961, and is really of no value to us. In the case of State vs. City of McAllen, _supra_, the court held that a city ordinance was invalid because the mayor had not signed it, this being the real point and issue in the case; but the court also said, which we are frank to state may be dictum, the following:

> "As all ordinances must be approved by a majority vote of those present and voting, and a quorum may consist of three commissioners, it would appear that the requirement of a majority vote has been satisfied in this case."

In that case the mayor and four councilmen were present, and two voted "yes", one voted "no", and the mayor and one councilman did not vote. The language in this case indicates that Judge Ryan, who wrote the opinion, favored the rule laid down in the case of Rushville Gas Co. vs. City of Rushville, supra.

As indicated by the authorities on the question, this is a very close and difficult question to decide, and we realize that we can decide one way almost as logically as we can decide the other way. However, we feel like the court did in State vs. Yates, supra, after it had reviewed the evenly balanced authorities on both sides of the question, in which it said:

> "We are inclined to the opinion that the proper rule is that those who remain silent shall be deemed to assent to the act of those who do vote."

There are some other reasons why this might be an enforcible contract. You state that "all members of the court, however, signed such contract".

We do not believe that the signing of this contract alone by the commissioners makes it a binding contract, and this belief is due to the rule of law stated in 11 Tex. Jur. 535, as follows:

> "A contract or agreement made by a county is valid and binding only if made under the authority of a resolution or order duly passed at a meeting of the commissioners' court and entered upon the minutes of such meeting."

The rule was stated in Camp vs. Thomas, 26 S.W. (2d) 470, as follows:

> "* * * Every person is charged with the knowledge of the law that commissioners' courts can be bound by their agreements only when they act as courts and by orders duly passed. No rights can be acquired as against a county by agreements with the individuals composing a commissioners' court."

However, the signing of the contract by all of the commissioners might be used as part of the evidence in proving that this is an enforcible contract under the theory of ratification or estoppel, which theory is expressed in 11 Tex. Jur, 637, as follows:

> "Where the evidence shows that the commissioners' court has acted with knowledge of the circumstances, and that the other party to the

— alleged contract has innocently placed himself
in a situation which will cause him loss in case
the contract is not sustained, it may be con-
cluded that the county is bound thereby. The
ratification or estoppel must be based upon ac-
tion on the part of the commissioners' court."

This rule of ratification was expressed in the cases of
Boydston vs. Rockwall County (Tex. Sup. Ct.) 86 Tex. 234, 24 S.W.
272; Williams vs. Pure Oil Co. (Tex. Comm. App.) 78 S.W. (2d) 929;
and Galveston County vs. Gresham (Tex. Civ. App.) 220 S.W. 560.

The contract in question is dated May 26, 1937, and we
do not know what has transpired since that date. It may or may not
be that Robertson County has ratified it and is estopped to deny
the contract.

Our answer to your first question is that by virtue of the
two to one affirmative vote by the commissioners' court the contract
is valid; and in addition thereto the contract might be enforcible
because of facts transpiring that constitute ratification and estop-
pel.

We will now endeavor to answer your second question.

The statute which authorizes these kinds of contracts is
Article 7335 of the Revised Civil Statutes of Texas, and it reads,
in part, as follows:

"Whenever the commissioners' court of any
county after thirty days written notice to the
county attorney or district attorney to file
delinquent tax suits and his failure to do so,
shall deem it necessary or expedient, said court
may contract with any competent attorney to en-
force or assist in the enforcement of the col-
lection of any delinquent State and County taxes
for a per cent on the taxes."

This office has heretofore held in Attorney General's
Opinion No. 0-257, dated February 14, 1939, that a Commissioners'
Court whose elective term ended in 1938 could not make a contract
of this kind which was not to take effect until 1939, when a new
Commissioners' Court would be in office, on the ground that one
Commissioners' Court could not bind the next Commissioners' Court
in personal matters of this kind. However, we will not go so far
as to hold that the Attorney employed by the Commissioners' Court
in contracts of this kind must cease work to the extent of not
prosecuting cases already filed just because a new Commissioners'
Court and a new County Attorney have taken office, even though the
contract specifically provides that the attorney so employed shall

be allowed six months after the terminating date of the contract, which was also the end of the Commissioners' and the County Attorney's term of office, to prosecute suits already filed to final judgment.  In this case the contract makes such a provision and grants the attorney so employed the right to finish prosecuting the suits already filed; and we believe that the Commissioners' Court had the authority to grant the attorney this privilege.  Common sense dictates that the attorney who filed the suit and started it would be in a better position to prosecute the suit to judgment than some other attorney, and this is exactly what the Commissioners thought in this case when they put that provision in the contract.

There are no authorities that we can find that bear directly on this situation; but we believe that the rule stated in 4 Page On The Law of Contracts, 2nd Ed., 3645, applies to this case; that rule being as follows:

"A promise to do all work which may be ordered in a certain period of time requires performance of all orders received in such time, although performance can not be had until after such period has elapsed."

The only case involving this rule that we have found is the case of Robert Smith Printing Co. vs. Board of State Auditors, 148 Mich. 561, 112 N.W. 130, which says in part as follows:

"For two years ending July 30, 1906, the relator was awarded the binding contract by the Board of State Auditors.  By that contract relator agreed to do and perform for the State of Michigan the binding, stitching, trimming, etc., and the work incident thereof, which under the law comes within the binding contract, that may be ordered according to law by the legislative, judicial and executive departments for the term of two years, * * *

"Relator was the successful bidder for the state printing for the term of two years, commencing July 1, 1906.  Before that time the Board of State Auditors had given the relator three orders.  * * * Relator contends that the former contract was completed on the last day of its life, to-wit, June 30, 1906, and that whatever work was done afterwards, although the orders were given before, was done under the new contract.  We think this contention cannot be maintained.  * * * If the relator had not obtained the new contract and the orders had been received before the termination of its old contract, it

would clearly have been entitled to complete
the order."

It has been suggested that the new County Attorney, who
took office on January 1, 1939, has certain interests in these
cases. He does have a vital interest in the suits filed after he
takes office, because he gets a fee as provided in Article 7332 if
he files the suits (and this was given for one of the reasons for
Attorney General's Opinion No. O-257, referred to above); but he
does not have this interest in tax suits that have already been
filed by an outside tax attorney before he took office, and which
suits are only being prosecuted to final judgment. The reason he
does not have this interest in the suits already filed by an outside
—tax attorney is because he would not receive a fee in these suits,
and that is by virtue of Article 7335e, which reads in part as fol-
lows:

> "No contract shall be made or entered in-
> to by the Commissioners' Court in connection
> with the collection of delinquent taxes where
> the compensation under such contract is more
> than fifteen per cent of the amount collected.
> * * * Provided however the County or District
> Attorney shall not receive any compensation
> for any services he may render in connection
> with the performance of the contract or the
> taxes collected thereunder."

Our answer to your second question is that the Commission-
ers' Court did not exceed its power in making the provision that you
quote in Section VIII of the contract.

We will now consider your third question.

In our answer to your second question we held that under
the terms of the contract the tax attorney in this case had a right
for six months after the expiration of the term of the contract to
prosecute to final judgment the cases already filed. It naturally
follows that if he has that right, it would be improper for the
County Attorney to take charge of those suits before the six months
had expired. The same reasoning that we used in answering the sec-
ond question will apply in answering this third question.

In further support of this reasoning it will be observed
that Article 7335 provides in the last sentence as follows:

> "* * * the attorney with whom such contract has
> been made is hereby fully empowered and author-
> ized to proceed in such suits without the join-
> der and assistance of said county or district
> attorneys."

The constitutionality of Article 7335 was upheld by the Supreme Court of Texas in the cases of Cherokee County vs. Odom, 118 Tex. 288, 15 S.W. (2d) 538; and Commissioners' Court of Madison County vs. Wallace, 118 Tex. 279, 15 S.W. (2d) 535. Subsequent to those cases the Commission of Appeals, Section A, in the case of Easterwood vs. Henderson County, 62 S.W. (2d) 65, said:

> "The power to provide for the collection of delinquent taxes, and prescribe the compensation to be paid for services rendered in that respect, resides exclusively in the Legislature. Under this power, the commissioners' court may be granted authority to make binding contracts looking to the collection of delinquent taxes, and to the payment of a part of the collections, as compensation for services performed in that respect."

Our answer to your third question is that the present County Attorney could not at the present time take charge of the suits that were filed by the delinquent tax attorney prior to the terminating date of the contract (December 31, 1938); but he can take charge of them at the end of six months after the terminating date if any are still on the docket.

We will now give consideration to your fourth question.

The contract provides that Robertson County is to pay the tax attorney employed under the contract "13 per cent of the amount collected of all delinquent taxes, penalty and interest * * * actually collected * * *, of which Second Party (tax attorney) is instrumental in collecting * * * *.

We have already held in our answer to question two that the tax attorney is entitled to six months after the terminating date of the contract, December 31, 1938, in which to prosecute to final judgment suits already filed; and we have held in our answer to question three that during that six months period the County Attorney could not take charge of the tax suits already filed by the tax attorney.

Suits that are filed by the tax attorney during the contract period and settled by him within six months after the terminating date are clearly contemplated by the contract, and the provision referred to above that provides for payment to the attorney of 13% of the amount collected applies without question to these cases.

Our answer to your fourth question is that the contractor, the tax attorney, has the right to a 13% commission on a recovery in the settlement of a tax suit after December 31, 1938, provided the suit was filed by the tax attorney prior to December 31, 1938, during

the term of the contract, and was settled within six months of December 31, 1938.

we will now take up your fifth question.

This contract does not expressly state that time is of the essence. If a law suit should develop between the parties to the contract, it is impossible for us to say at this time what pleadings would be filed and what evidence would be admitted, but it may be that the law suit would develop so that the rule in Taylor Milling Co. vs. American Bag Co., 230 S.W. 782, would apply, which rule is in words as follows:

> "Whether or not time is of the essence of a contract is a question of fact for a jury, unless the contract expressly makes it so, or unless the subject-matter of the contract is such that a court will take judicial knowledge of the fact that the parties obviously intended that time should be of the essence of the contract. Such would be the case in a contract to deliver cotton or wheat, or any article of which there was a constantly fluctuating market, ascertainable by established market quotations. The modern tendency is to hold that time is not of the essence of a contract except under the circumstances above stated."

This office has been called on to answer many questions, and we have ventured our opinion when there was such a lack of authority that it amounted only to a guess as to what the courts would do; but we will not go so far or be so reckless as to guess what a jury will do.

On account of the fact that this may develop into a jury question, we believe that it would be improper for us to attempt to answer it.

We will now endeavor to answer your sixth question.

In paragraph VII of the contract it is provided that Robertson County is to pay the tax attorney employed under the contract "15 per cent of the amount * * *, actually collected and paid to the collector of taxes during the term of this contract, of which Second Party (tax attorney) is instrumental in collecting". This raises the question: What is "the term of this contract"? In paragraph VIII it is provided that "this contract shall be in force from June 1, 1937, to December 31, 1938, * * * and at the expiration of said period this contract shall terminate * * *." Taking these provisions alone into consideration we would conclude that the contractor

(tax attorney) could only receive commissions from payments made during the term of the contract which was from June 1, 1937, to December 31, 1938, and that he could not receive commissions from payments made after that time; but there is another provision that must be considered, and that is that part of paragraph VIII which provides as follows: "Except the contract shall be allowed six months in which to prosecute to final judgment suits filed prior to December 31, 1938."

In construing this last quoted provision we held in our answer to your second question that this provision was valid, and that the tax attorney has the right provided for in this provision. If the tax attorney "is instrumental in collecting" these taxes by virtue of having filed a suit, that is if the suit caused the payment of these taxes, then surely the tax attorney is entitled to receive a commission, because if the tax attorney cannot receive these commissions it would be useless as far as he was concerned "to prosecute to final judgment" after December 31, 1938, suits that he had filed prior to that time, and the above quoted provision from Section VIII of the contract would be meaningless. Such a construction would not be placed on this contract by any court, but the rule expressed in 10 Tex. Jur. 284 would be applied, that rule being as follows:

> "It is to be presumed that every provision
> of a contract was incorporated for a purpose.
> The court has no right to nullify any of its
> terms, and, if possible, a construction will be
> adopted which gives effect to each and every part
> of the instrument, in preference to one which
> would render any of the provisions therein mean-
> ingless."

Our answer to your sixth question is that the contractor (the tax attorney) could not continue to receive commissions on collections made by the Tax Assessor-Collector after December 31, 1938, with the exception that he is entitled to a commission on money paid to the Tax Assessor-Collector up to July 1, 1939, which he was instrumental in collecting by virtue of having filed a suit prior to December 31, 1938.

In making this last answer, we are only referring to valid suits which can be maintained. In an opinion, No. O-301, of this date, to H. P. McMillan, County Auditor, Franklin, Texas, we give a discussion of certain types of suits that cannot be maintained.

We will now answer your seventh question.

It is our opinion that our answer to question six also answers this question. You ask at what rate the commissions should be paid, and that is already set out at 15% of the amount collected.

Our answer to your seventh question is that the contractor (the tax attorney) could not receive commissions from the payment of delinquent taxes after December 31, 1938; with the exception that he is entitled to a commission on collections up to July 1, 1939, which he was instrumental in collecting by virtue of having filed a suit prior to December 31, 1938, and his rate of commission in these latter cases is 13 per cent of the amount collected.

We will now discuss and answer your eighth, and last, question.

We are unable to find in the contract any words by which the tax attorney guarantees to collect $100,000.00 in delinquent taxes by December 31, 1938; and, therefore, we conclude that the representations and guarantys to which you refer in your question were orally made at the time of the negotiations leading up to the making of the contract. The only provision in the contract that mentions a "guarantee" is Section XVI, which reads as follows:

"All parties hereto agree to the following change in the foregoing provisions of this contract, to-wit: Second party shall not receive any compensation whatsoever under and by virtue of this contract until One Hundred Thousand Dollars ($100,000.00) shall have been collected by said party of the second part. If, as, and when said party of the second part shall have collected One Hundred Thousand Dollars ($100,000.00) he shall be entitled to and must be paid the Thirteen per cent (13%) commission set out above, and thereafter said party of the second part shall be paid monthly at the rate of commission set out above. The above commission of 13% which is withheld as a guarantee that One Hundred Thousand Dollars ($100,000.00) will be collected shall be placed in escrow, payable to the party of the second part upon proof of the collection of the $100,000.00, the bank or banks to hold the escrow money being named by party of the second part, said bank or banks to be situated in Robertson County, Texas. Party of second part further agrees not to send out any notices or file any suit against delinquent taxpayers prior to August 15th, A.D., 1937."

This provision could not be construed as a guaranty that the tax attorney would collect $100,000.00 by December 31, 1938; but it merely provides that the tax attorney's compensation may be held up until he has collected $100,000.00, and in this connection it must be remembered that he is entitled to six months after December

1, 1938, in which to prosecute to final judgment suits already filed, and it may be that the total of $100,000.00 will be reached after December 31, 1938, while he is so prosecuting those suits, and then he would be entitled to his compensation.

In regard to the oral agreement to which you refer by which the tax attorney represented and guaranteed that he would collect $100,000.00, we must not overlook the rule stated in 17 Tex. Jur. 844, as follows:

"Oral evidence is inadmissible to vary an unconditional promise to pay money by showing a prior or contemporaneous parol agreement that the promisor should not be required to pay or that it was not absolutely payable - as, for example, that it should be payable only upon the performance of a specified condition or the happening of a certain contingency, or that payment should be made out of a particular fund."

The same rule is laid down in Gonzales College vs. McHugh (Tex. Sup. Ct.) 39 Tex. 346; Robertson vs. City Nat. Bank (Tex. Comm. App.) 36 S.W. (2d) 481; Robert & St. John Motor Co. vs. Bumpass, 65 S.W. (2d) 399; and Hidalgo County Water Improvement Dist. No. 4 vs. Western Metal Mfg. Co., (U.S. C.C.A.) 16 Fed. (2d) 893. It may be that if a law suit occurs involving this contract that fraud, accident or mistake will be alleged and thereby make oral representations admissible in evidence, but we have only the contract before us in answering your questions, and we can only be governed by the words of the contract.

Our answer to your eighth question is that under the facts that you have given us on this question we do not consider that the contract has been breached.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Cecil C. Rotsch_

Cecil C. Rotsch
Assistant

CCR:FG

APPROVED:

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS