## MARTIN COUNTY v. MAGNOLIA PETROLEUM CO. et al.

### No. 6192.

Court of Civil Appeals of Texas. Amarillo.

Feb. 4, 1952.

Thos. B. Adams, Stanton, Greenlees, Rodgers & Adams, Thomas & Thomas, Big Spring, for appellant.

R. T. Wilkinson, Jr., Earl A. Brown, W. B. Handley, Willis & Lewis, Lon Sailers, Turner, Rodgers, Winn, Scurlock & Terry, Dallas, Crenshaw, Dupree & Milam, Lubbock, D. E. MaGee, Levelland, B. Reagan McLemore, Longview, Carl W. Jones, Horace N. Burton, Midland, Willard B. Wagner, Williams, Lee & Kennerly, Burney Braly, Houston, G. R. Pate, Fort Worth, Seeligson, Cox, Patterson & Grant, San Antonio, Rayburn L. Foster, Harry D. Turner, Bartlesville, Okl., Brown, Darrough & Ball, Oklahoma City, Okl., for appellees.

LUMPKIN, Justice.

This suit was filed by the appellant, Martin County, Texas, against about 95 defendants—including the appellees, Magnolia Petroleum Company, Carrie Slaughter Dean, Andrew P. Catto, Ed Dela Catto, Roberta Wright Reeves, Dela S. Wright, Stanolind Oil and Gas Company, Phillips Petroleum Company, Anderson-Prichard Oil Corporation, The Superior Oil Company, Continental Oil Company, Sunray Oil Corporation and J. R. Dunaway—to recover title and possession to Leagues 58, 59 and 60 and parts of Leagues 57 and 61, situated in Hockley and Cochran Counties.

In 1885, pursuant to the Act of March 26, 1881, Laws 1881, c. 61, Gammel's Laws of Texas, Vol. 9, p. 157, this land had been patented to Martin County as its share of the public school lands of the State of Texas. On May 13, 1895, the Commissioners' Court of Martin County entered into negotiations with John Scharbauer to sell 17,712 acres of its school lands for $1 per acre. Later, on April 6, 1899, the Commissioners' Court passed a resolution which authorized the sale of the same land to Scharbauer for $13,284 or for 75 cents per acre. On the same day the Commissioners' Court contracted with Scharbauer to convey the land to him for a consideration of $13,284, payable $2,000 in cash with the balance of $11,284 to be paid on or before the expiration of 20 years with interest at the rate of 5 per cent per annum. On July 1, 1899, Scharbauer assigned his contract with the appellant to C. C. Slaughter and conveyed to Slaughter all of his interest in these lands.

On August 12, 1907, the Commissioners' Court passed the following order:

268

"It is ordered that County Attorney A. L. Green be and is hereby instructed to negotiate with C. C. Slaughter and to accept his proposition heretofore made if the same is still pending regarding the acceptance of the $12,000 principal on the Martin County School Land situated in Hockley and Cochran County, Texas."

Later, on the same day, there was entered on the minutes of the Commissioners' Court an order which recited that Slaughter had paid the full amount, both principal and interest, due under the contract of sale and which directed the county judge, on behalf of the county, to execute and deliver to Slaughter a general warranty deed. On September 12, 1907, there was entered in the minutes an order which stated that the county judge exhibited to the court the deed he had executed to Slaughter pursuant to the order of August 12, 1907, and provided that the "deed be ratified and approved, and that the county judge deliver the same to said C. C. Slaughter or his representative." The deed to Slaughter is dated September 10, 1907. Title to a part of the lands passed from Slaughter to appellee Carrie Slaughter Dean, and title to the remaining portions passed from Slaughter to appellee Dela Slaughter Wright. All of the other appellees claim through either Carrie Slaughter Dean or Dela Slaughter Wright.

Trial was to a jury, but at the conclusion of the evidence the trial court instructed a verdict for the appellees and entered judgment in favor of them. From this judgment the appellant has duly perfected this appeal.

The appellant contends that the order of April 6, 1899, authorizing the contract with Scharbauer and the order of September 12, 1907, ratifying the deed to Slaughter are invalid because passed at special sessions of the court. Moreover, the appellant insists that the order of August 12, 1907, directing the execution of the deed to Slaughter, was never considered, acted upon or passed by the Commissioners' Court of Martin County. This order recited that on that date the court met at 2 p. m. with the county judge, the four commissioners, the sheriff, the county attorney, and the clerk present. To show that this resolution was never passed upon by the Commissioners' Court, the appellant introduced the witness W. A. Kaderli, who said that on August 12, 1907, he was Deputy County Clerk of Martin County and was present at the meeting of the Commissioners' Court held on that date. He stated that since the courthouse was small, most of the county officials maintained their offices elsewhere; that on the morning of August 12, 1907, the Commissioners' Court with all members present convened at the courthouse; that the county attorney was present; and that the court entered the order directing him to negotiate with Slaughter with respect to the deed to the school lands. Kaderli remembered that he was around the courthouse all day. He testified that after the Commissioners' Court recessed it did not reconvene at 2 p. m., as recited in the order directing the sale to Slaughter, but that Slaughter's attorney brought the order to him that afternoon and told him the court had passed it. Kaderli, as deputy clerk, copied the order into the minutes of the court. Kaderli's testimony was excluded by the trial court. The appellant complains of this action of the court.

In our opinion, however, even if Kaderli's testimony was admissible, the appellant suffered no harm by its exclusion. The entire record shows that even if the testimony had been admitted, the appellees were entitled to an instructed verdict because Martin County has no right, title or interest in the Martin County School Lands for the following reasons: (1) By accepting the purchase money for the school lands and using it for county purposes the county has ratified the sale to C. C. Slaughter; (2) the order of September 12, 1907, ratified the previous proceedings relating to the sale; and (3) the judgment entered in the case of Martin County v. Magnolia Petroleum Company, et al. in Hockley County, is *res adjudicata* to any of the issues raised in this case. We shall discuss each of these in order.

 The sale of school lands is controlled by Art. 7, Sec. 6, of the State Con-

stitution, Vernon's Ann.St. It reads in part:

"All lands heretofore, or hereafter granted to the several counties of this State for educational purposes, are of right the property of said counties respectively, to which they were granted, and title thereto is vested in said counties, and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands in whole or in part, in manner to be provided by the Commissioners' Court of the county. * * * Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in bonds of the United States, the State of Texas, or counties in said State, or in such other securities, and under such restrictions as may be prescribed by law; and the counties shall be responsible for all investments; the interest thereon, and other revenue, except the principal shall be available fund."

Thus it may be seen the Constitution gives to the Commissioners' Court the absolute power to sell school land and leaves it free to provide the manner of sale. Dallas County v. Club Land & Cattle Co., 95 Tex. 200, 66 S.W. 294.

The case of Gallup v. Liberty County, 57 Tex.Civ.App. 175, 122 S.W. 291, writ refused, is similar in many respects to the one before us. In that case, as in this one, the lands involved were school lands. In that case the Commissioners' Court of Liberty County had appointed an agent to sell the lands. After the agent sold them, the consideration was paid into the county treasury. Later this money was invested in bonds and the interest therefrom was used in the maintenance of the county's public schools. The court held that the Commissioners' Court had no power to delegate its authority to sell school lands, but the court further held that since the county had received the purchase money and had used it for county purposes, the Commissioners' Court had ratified the sale and was not entitled to recover the school lands.

The Liberty County case is cited with approval by the Commission of Appeals in the case of Williams v. Pure Oil Co., 124 Tex. 341, 78 S.W.2d 929, 931, which involved 132.8 acres of school lands belonging to Nacogdoches County. These lands were sold through an agent for a consideration of $88.53 cash and two notes for $88.53 each. Subsequently the notes were paid and the money was accepted by Nacogdoches County. The Commission of Appeals held that the original sale and deed were invalid for the reason that the county could not delegate to an agent the trust duties imposed upon the county but further held that because Nacogdoches County accepted payment of the vendors' lien notes, such an acceptance was a ratification of the original deed and the county was estopped to assert title even though the original sale was invalid. The court said: "In this connection it is settled that, when the governing body of a municipal corporation is empowered to do an act purely administrative in its character, it may ratify such act when done by another without authority. Boydstun v. Rockwall County, 86 Tex. 234, 24 S.W. 272. This rule applies to a county, and its governing body, the commissioners' court." Gallup v. Liberty County, supra, is cited with approval in the following cases: Slaughter Cattle Co. v. Potter County, Tex.Civ.App., 235 S.W. 295, affirmed Tex.Com.App., 254 S.W. 775; Carter-Kelly Lumber Co. v. Angelina County, 59 Tex. Civ.App. 310, 126 S.W. 293, writ refused; Brazoria County v. Padgitt, Tex.Civ.App., 160 S.W. 1170, writ refused; Mecom v. Ford, Tex.Civ.App., 256 S.W. 701, writ refused.

In this case the record reveals that Martin County collected all the money due under the terms and provisions of the contract with Scharbauer and of the deed to Slaughter. This money was deposited in the proper school fund, and the principal has been invested in bonds at interest for nearly 50 years. The interest therefrom has been used for the maintenance of the public schools of the county during that period of time. Further, the record reveals that today Martin County has the principal invested in bonds at interest and that these

bonds are credited to the Permanent School Fund of Martin County. The Commissioners' Court has on numerous occasions approved of the disposition of these funds. Since the county received the purchase money and used the funds for county purposes, it has, under the authorities cited above, ratified the sale of the lands to C. C. Slaughter, even though there may be irregularities in the various orders of the Commissioners' Court preceding the execution of the deed of September 10, 1907.

Indeed, the order of September 12, 1907, wherein it is said that the county judge exhibited to the court the deed he had executed to Slaughter for the school lands, ratified the previous proceedings relating to the sale, even though this order was passed at a special session of the court. Articles 2342, 2343 and 2348, Vernon's Annotated Civil Statutes. When, on September 12, 1907, it was made known to the Commissioners' Court that the county judge had executed the deed to Slaughter and when it was shown by the deed that the entire consideration had been paid, the court either could have retained the purchase money and ratified and approved the deed or could have refused to do so. The court elected to ratify the deed, and the appellant is estopped to deny its validity. Boydstun v. Rockwall County, 86 Tex. 234, 24 S.W. 272; Morrison v. Kohler, Tex.Civ. App., 207 S.W.2d 951, writ refused, n. r. e.

Moreover, appellant has no interest in the Martin County lands for a third reason. It appears that Martin County had previously filed in Hockley County a similar case which involved the same parties and the same school lands involved in this case. The final judgment in the Hockley County case, entitled Martin County v. Magnolia Petroleum Company, et al, Cause No. 1601, which decreed that Martin County had no title or interest in the four leagues of school lands, was introduced by the appellees as res adjudicata of all issues of the case at bar. Once an issue of title has been determined by final judgment between two parties, their rights have been adjudicated. Trigg v. Whittenburg, Tex.Civ.App., 129 S.W.2d 472, writ refused; Phillips Petrole-

um Company v. Trigg, Tex.Civ.App., 157 S.W.2d 411.

In this case, however, Martin County not only has sued for title and possession of the property, but, in the alternative, seeks to recover the excess acreage (250 acres) as an undivided 250/17963 interest. No testimony was introduced showing that the lands conveyed by the appellant to Slaughter contained any excess acreage; as a matter of fact the patents, the field notes and all of the title papers introduced call for four leagues. The only reference to excess acreage is contained in the judgment of the district court of Hockley County. It contains the following recitals:

"The court finds that the land conveyed by Martin County to C. C. Slaughter as aforesaid contains 109.8 acres in excess of the recited acreage contained in said deed, and that the cross plaintiffs have tendered into the registry of this court the sum of Eighty-two and 35/100 ($82.35) Dollars, being 75 cents per acre for such excess acreage, plus interest thereon at the rate of 6% per annum from the 6th day of April, A.D. 1899. * * * It is further Ordered, Adjudged and Decreed by the court that the sum of money tendered to the credit of Martin County in the registry of this court be paid to Martin County."

The evidence in this case shows that the county treasurer of Martin County has received the sum of $338.80, the amount called for in the judgment—i. e., $82.35, plus interest thereon at the rate of 5 per cent per annum from the 6th day of April, 1899. In our opinion the appellant has received payment for the excess acreage; and, since the Hockley County judgment is not void on its face (and the appellant does not contend that it is), it is res adjudicata of all the issues at bar.

After a careful study we are convinced that the entire record in this case reveals that the appellant, Martin County, has no interest or title in the Martin County School Lands. Therefore its points of error are overruled, and we affirm the judgment of the trial court.